GEORGE BUCHANAN et al., respondents,

*v.*

REBA RUSSELL ROSELLE BUCHANAN, appellant.

[Argued July 2d, 1908.    Decided February 9th, 1909.]

1. The next of kin of a decedent have no standing in a court of law or equity to maintain an action for the recovery of property alleged to belong to the estate of their decedent. Such actions can be brought only by the duly appointed personal representative of the deceased.

2. The exception to this rule arises where the personal representative of the deceased, by reason of collusion with the defendant or otherwise, is derelict in the performance of his duty, when, as in the case of a delinquent trustee, the next of kin, like the *cestui que trust*, may maintain the action, joining the administrator as a party defendant.

3. *Flagler* v. *Blunt, 32 N. J. Eq. (5 Stew.) 518; McCarter, Attorney-General,* v. *Clavin, 72 N. J. Eq. (2 Buch.) 642,* distinguished. Reversing *Buchanan* v. *Buchanan, 73 N. J. Eq. (3 Buch.) 544.*

On appeal from a decree of the court of chancery advised by Vice-Chancellor Leaming, whose opinion is reported in *73 N. J. Eq. (3 Buch.) 544.*

*Mr. John W. Wescott,* for the respondents.

*Messrs. Carrow & Kraft,* for the appellant.

The opinion of the court was delivered by

DILL, J.

This suit was brought in equity by the heirs-at-law and next of kin of Dr. John Buchanan, deceased, to impress a trust *ex maleficio* upon certain real and personal property in the possession of the defendant, which it was claimed was derived from or purchased with moneys embezzled from the decedent. The complainants allege in their bill that they are the only next of kin of the late Dr. Buchanan; that at his death he owed no bills; that no letters of administration were taken out on his estate; that Dr. Buchanan was the owner of and conducted a large and profitable business in proprietary medicines and in the publication of medical works, and that the defendant, while acting as his clerk or assistant, appropriated to her own use, both before and after his death, the profits of the business together with moneys and other property of the decedent and invested the same in specific real and personal property. The relief prayed for was that the defendant be required to deed to the complainants the real estate in her name; that she pay over to them and account for all moneys and deliver all securities in her possession or under her control, all of which were claimed to belong to the decedent's estate, and that the complainants should have full discovery and an injunction against the disposition of the property.

The defendant by her answer denied that the business referred to belonged to the deceased, and averred that the business and its earnings and the real and personal property described were all her own and that Dr. Buchanan had no money or property at the time of his death.

The learned vice-chancellor found the essential facts to be as stated in the bill and advised a decree, enjoining the defendant from in anywise disposing of the property in her possession or under her control until the appointment of an administrator,

to whom, when appointed, defendant is required to surrender the same.

The decree, in accord with the theory of the bill, was in effect an adjudication, which stripped the defendant of all title to the property in her possession or under her control and directed her to surrender it to an administrator, when appointed.

The defendant appeals from the decree and urges that the complainants, as next of kin, have no standing in equity to recover or to establish a resulting trust as to property of a decedent which is in the actual possession of and claimed by a third person, but that such equitable rights and remedies vest only in the executors or administrators as the duly appointed personal representatives of the decedent.

We think that this position is well taken. Heirs, next of kin and creditors cannot, in their own names, prosecute actions at law or suits in equity to recover the unadministered estate of a decedent or to collect debts or other choses in action due him. Such suits can be maintained only by the qualified personal representatives of the deceased.

Heretofore the precise question involved in this case does not appear to have been fully considered by this court, although the basic principle was recognized and applied by our supreme court in 1813 in *Mathis* v. *Sears, 3 N. J. Law (2 Penn.) 594,* and by the court of chancery in 1831 in *Shaver* v. *Shaver, 1 N. J. Eq. (Sax.) 437.* In 1889 the court of chancery (Vice-Chancellor Van Fleet) touched upon the doctrine in *Hayes* v. *Hayes, 45 N. J. Eq. (18 Stew.) 461,* affirmed by this court as *Hayes* v. *Berdan, 47 N. J. Eq. (2 Dick.) 567.*

Chancellor Williamson, in 1857, in *Harrison* v. *Righter, 11 N. J. Eq. (3 Stock.) 389,* applied the rule even where the next of kin of a deceased partner sought to call the surviving partner to account, the administrator being a party defendant, and held that in the absence of collusion a suit could not be maintained.

In *Mathis* v. *Sears, supra,* the children of Paul Sears, deceased, sued the defendant on the ground that their father during his lifetime had paid the defendant for a piece of land; that the defendant had promised their father a deed, but had failed

to perform. The plaintiffs recovered judgment below. The supreme court reversed, saying:

"A child, as such, cannot sue for a debt due to his father; it must be his executor or administrator."

From the opinion in *Shaver* v. *Shaver, supra,* a chancery suit by the next of kin to recover a legacy claimed to be due their ancestor, the following is applicable:

"Next of kin are not personal representatives, and cannot come as such into court representing the ancestor. If they were permitted to do so, it is conceived that much inconvenience would result from it, more, probably, than can well be foreseen. I have examined the books with some care, and have not been able to find a single case or principle to support the present proceeding."

After referring to and recognizing the right of next of kin to bring executors or administrators to an account, the court adds:

"But in this case the complainants seek to get in their hands the moneys of the estate or of the intestate, not from the administrator, but from some third person in whose hands the property happens to be, and to get it, not for the purpose of paying debts, or applying it in a course of administration, but of appropriating it directly to their own use."

The same principle was recognized in the decision of Vice-Chancellor Van Fleet in *Hayes* v. *Hayes, supra:*

"The title to the debt in question, on the probate of the testator's will, vested in his executrix, together with the right to all remedies given by law for its recovery. All goods and chattels, actions and commodities which were of the testator in right of action or possession, as his own, at the time of his death, pass, on his death, to his executor."

That the law has been so applied, whether the next of kin sue at law upon debt or for conversion of property belonging to the estate of the deceased, or whether they invoke the aid of a court of equity, may be shown by a brief review of the leading cases in England and the United States.

An early case (1737) is *Bickley* v. *Donington, 2 Eq. Cas. Abr.* 253, in which a legatee brought suit against the executor and

debtors of the estate of the deceased. Lord-Chancellor Hardwicke dismissed the bill in the following words:

"The bill is totally improper and inconsistent with the principles of law and the rules of this court. * * * The whole management of the estate belongs to the executor, and the right of it is vested in him, and not to be taken out of him by creditors or legatees."

In 1802 Lord Eldon, in deciding the case of *Alsager* v. *Rowley, 6 Ves. 748,* followed the same rule and quoted with approval from the notes of Lord Hardwicke.

Later the court of chancery applied the doctrine strictly in *Stainton* v. *Carron Company, 18 Beav. 146.* Legatees filed a bill against the defendant company in which the testator had been shareholder and agent, and against the legal representatives of the estate, for an accounting and settlement of alleged dealings between the testator and the company, and for a decree requiring the company to turn over certain funds to the executors. Sir John Romilly, master of the rolls, sustained a demurrer to the complaint in the following concise language:

"It is obvious that the relief prayed by this bill, if proper to be sought by anyone, ought to be at the instance of the trustees and executors of the testator's will. * * *

"I think it unnecessary to go in detail through all the cases to be found on this subject. I think that they may be summed up thus: that the persons interested in the estate of the testator, not being the legal personal representatives, will not be allowed to sue persons possessed of assets belonging to the testator, unless it is satisfactorily made out that there exist assets which might be recovered, and which, but for such suit, would probably be lost to the estate."

In *Walker* v. *Walker (1871), 25 L. T. Rep. 481,* a bill was brought by legatees against Margaret Walker and the executors of the will. The complaint alleged that the testator, during his lifetime, had purchased stock of the Bank of Scotland in the name of his sister Margaret; that she held it merely as trustee for the testator, and that it formed part of his estate. Complainants prayed for a declaration accordingly, and for a transfer of the said stock to the executors.

Lord Romilly dismissed the bill on the ground that "the executors were the proper persons to sue to recover assets belonging to the testator's estate."

In the United States courts *Allen* v. *Simons, 1 Curl. 122* (*United States Circuit Court for Rhode Island*), is not only parallel to the case at bar but a leading authority. William Simons died intestate leaving personal property consisting of a newspaper plant. The bill alleges that after the death of the intestate, William Simons, Jr., continued to run the business under an apparent title; that he had been merely an agent before his father's death and that the documents under which he claimed title were invalid. The answer of the heirs of William Simons, Jr., was that he held a valid title to the property in his own name and not as trustee.

Judge Curtis, in refusing to allow the bill for account and surrender of the property, adhered to the well-established rule:

"Whatever may have been the interest of William Simons, Sr., in this property, his children did not acquire that interest by his decease. The rule of the common law laid down by Lord Coke (*Co. Litt. 8a*) that a man, by the common law, cannot be heir to goods or chattels, for *haeres dicitur ab haeriditate,* is in force in Rhode Island, and upon the decease of anyone having personal estate, his children do not become its owners. They acquire only that qualified equitable right to distributive shares of what shall remain after payment of the just debts and funeral charges of the deceased, and the expenses of settling his estate, which is conferred upon them by the statute of distributions. This qualified equitable right can only be worked out through a settlement of the estate by an administrator, appointed according to the laws of the state, who alone has the title to personalty cast on him by those laws, and who alone is competent to sue, either at law or in equity, to reduce the personal property and rights of the intestate to possession."

*Flynn* v. *Flynn, 183 Mass. 365,* decided by the supreme court of Massachusetts in 1903, is directly in point.

The plaintiff, widow of David Flynn, brought a bill in equity to recover personal property which, she alleged, had been frandu-

lently conveyed by her husband to. his son, the defendant, with the intention of depriving her of her estate.

Defendant demurred on the ground that there was no cause for equitable relief and that the plaintiff was not the proper party to sue. Judge Knowlton sustained the demurrer and stated his reasons as follows:

"If the property was wrongfully conveyed, as the plaintiff alleges, the executors or administrators, who are the personal representatives of the deceased, are the proper parties to recover it for the benefit of those who are entitled to it. The title to all the personal property of a deceased person vests in his executor or administrator by relation from the time of his death, and no one else can maintain an action for it. Not even the sole heir-at-law, or a legatee, has any title which he can enforce by suit against a third person. But the plaintiff's rights cannot be en-forced by a suit in equity in her own name against those holding her husband's property."

The supreme court of errors of Connecticut ruled upon the question in 1803, in *Tabor* v. *Packwood, 1 Day 150:*

"The right of action,· * * * if an action can be main-tained, does not belong to the defendant in error, as heir-at-law, the only capacity in which he sues, but to the executors or administrators on the estate."

Likewise in *Hunter* v. *Hallett, 1 Ed. Ch. 388,* the court ruled:

"Although a husband holds a bond and mortgage made out in favor of his wife, and receives the interest, yet this is not a re-duction into possession. And if she dies, he cannot sue upon it without taking out letters of administration, even though he may be exclusively entitled. * '* * This appears to be a well-established rule and one which cannot be dispensed with even in a court of equity."

Again, in *Jenkins* v. *Freyer, 4 Paige 47,* it was held that one of the next of kin cannot maintain a suit in equity for an account and distribution of the decedent's estate without first taking out letters of administration, although he is exclusively entitled to the beneficial interest therein.

In *Muir* v. *Trustees, 3 Barb. Ch. 477,* the complainants, as next of kin of the deceased, filed a bill in equity against the repre-

sentatives of deceased persons, who, pursuant to a paper-writing which had been admitted to probate and which appointed them executors, had transferred a large part of the estate of the deceased to the defendant trustees and to the other defendants. The bill alleged that the paper-writing was void and that the deceased died intestate and prayed for an accounting and that the property of the deceased which had been transferred as above stated be turned over to them. Chancellor Walworth dismissed the bill and held that the defendants were "liable to the personal representatives, whenever such shall have been appointed, but not to the complainants. The proper course for the complainants, in that case, would be to procure the appointment of an administrator, and have a suit instituted in his name, to recover the property from any person into whose hands it may have come, and who had converted it to his own use."

Further analysis is unnecessary, but other leading cases, which enforce the same rule strictly, are: *West* v. *Howard, 20 Conn. 581; Lawrence* v. *Wright, 23 Pick. (Mass.) 128; Woodin* v. *Bagley, 13 Wend. (N. Y.) 453; Caleb* v. *Hearn, 72 Me. 231; Lee* v. *Gibbons, 14 Serg. & R. (Pa.) 105; Champollion* v. *Corbin, 71 N. H. 78; Douglass* v. *McCarer, 80 Ind. 91; Pond* v. *Sweetser, 85 Ind. 144; Somervaill* v. *McDermott, 116 Wis. 504; Palmer* v. *Palmer, 55 Mich. 293; Davis et al.* v. *Corwine & McGuire, Executors, 25 Ohio St. 668; McChord* v. *Fisher's Heirs, 13 B. Mon. (Ky.) 194; Davidson* v. *Potts, 42 N. C. (7 Ired. Eq.) 272; Leamon* v. *McCubbin, 82 Ill. 263.*

These authorities are conclusive of the case at bar. If the defendant embezzled and misappropriated the property of Dr. Buchanan, investing it in the real estate, bank stock and other property described, she may be liable to the legally qualified personal representative of Dr. Buchanan, but not to the complainants.

On the same principle that permits a *cestui que trust* to maintain actions which his trustee should bring when the latter neglects or refuses to bring them, the exception to the rule above stated arises when, although there is an administrator, he neglects or refuses to prosecute suits for the recovery of his decedent's estate. In such case, the next of kin may sue to recover

the property, joining the personal representative as a party defendant.

The complainants contend that the decree may be supported upon the doctrine that the next of kin of a decedent may obtain an injunction and the appointment of a receiver for the purpose of conserving the property of a decedent pending the appointment of an administrator. But in our opinion this principle is inapplicable to the present case. The learned vice-chancellor apparently adopted this theory of the complainants, citing *Flagler* v. *Blunt, 32 N. J. Eq. (5 Stew.) 518; Hansford v. Elliott, 9 Leigh 79.* Although these authorities establish the jurisdiction of a court of equity to conserve property of a decedent in the possession of a third person, yet an analysis of the cases cited and many others shows that this equitable jurisdiction has been assumed only where there is danger of loss if the property, presumptively or actually belonging to the estate, is not protected by an injunction or the appointment of a receiver, pending an application for administration upon the estate, but not to finally adjudicate as to the title.

In *Flagler* v. *Blunt, supra,* it clearly appeared in a suit by a creditor of a decedent that the defendant was in possession, through a sale made by himself under a claim of ownership, of the proceeds of all the property of which his uncle died possessed, and was about to remove the same from the jurisdiction.

We fully agree with the decision of Chancellor Runyon when he rules that in such a case a court of equity has power to appoint a receiver to conserve the property, and that "If it had not such power, there would be a failure of justice. The property would be liable to be taken away out of the state, by any designing person, before administration could be obtained, and thus those entitled to the estate be defrauded. It must be within the power of this court to prevent so obvious and gross a wrong."

With *Hansford* v. *Elliott, supra,* also relied upon by the vice-chancellor, we likewise agree so far as the court there said:

"It would be productive of much inconvenience and injustice if they" (the legatees or distributees) "could not avail themselves of their equitable rights to enjoin a sale (as in the present case) or to prevent other irreparable mischief, before an administra-

tion of the estate could be obtained, or where an executor or administrator should be indisposed to interfere."

But further than this we decline to follow this case as an authority, because the judgment apparently affirmed a decree in favor of the complainants for a distribution of the property in question.

The recent case of *McCarter, Attorney-General,* v. *Clavin, 72 N. J. Eq. (2 Buch.) 642,* in our court of chancery, is not only consistent with the views herein expressed but well illustrates the precise situation to which the rule of *Flagler* v. *Blunt* is applicable. In the *Clavin Case* the deceased died seized of real estate of value, and the defendant, claiming to be a creditor of the deceased, had obtained letters of administration, but had permitted the property to be sold for taxes. Foreclosure proceedings had been brought and the property was likely to be entirely lost. Moreover, a paper had been offered for probate as the will of the deceased, giving rise to litigation that threatened to be protracted. The state claimed the property by escheat and filed a bill asking that a receiver be appointed to collect the rents and to pay off and discharge the taxes. The prayer was granted, the vice-chancellor holding that:

"Equity would seem to require that a receiver should be appointed to protect the property from loss, and to hold it for the benefit of those to whom it may be finally determined it belongs. * * * The property is in great danger of loss owing to tax sales and threatened foreclosure. It is clear that, in the absence of an heir, in the absence of an executor or of any lawful appointee entitled to hold the property together, it will be lost, and, in any event, the rents and profits will be misapplied."

*Flagler* v. *Blunt, supra,* and like authorities, go no further than to maintain that creditors or next of kin of a decedent may appeal to equitable jurisdiction to conserve a decedent's property, which is in danger of loss, pending the appointment of a personal representative or pending the trial of title to such property in a legal proceeding to which the personal representative of the decedent is a party.

But essentially different is the contention that creditors or next of kin may dispense altogether with a personal representa-

tive and proceed, either at law or in equity, to recover, in their own name and for their own use, property alleged to belong to the estate of the decedent, and that in the same proceeding they may have the title adjudicated and a decree entered ousting a third party of title and possession, whether the decree is that such third party shall deliver to an administrator to be appointed or otherwise.

This theory of the law has been rejected by a long line of authorities which follow Lord-Chancellor Hardwicke's vigorous declaration in 1737 (*Bickley* v. *Donington, supra*), that such a proposition is "totally improper and inconsistent with the principles of law."

It was upon the view of the law condemned by Lord-Chancellor Hardwicke that the bill was framed, the case was tried and a decree was entered finally adjudicating upon the title to the property described therein, by the terms of which defendant was ousted of title and possession of the property standing in her name, leaving her no alternative but to deliver the same to an administrator when appointed. Such decree, as matter of law, cannot be upheld.

The result of this determination as to the law would be to dismiss the bill if the issue of law had been presented by demurrer.

But although, for the reasons stated, the bill cannot be maintained in its present form, justice requires that the complainants be permitted to amend its frame so that it seeks for the appointment of a receiver to conserve the property which is the subject of the litigation, until an administrator of the estate of Dr. Buchanan shall have been appointed and the true ownership of the property determined by judicial decision, provided the proofs which have been submitted raise a presumption that the property is that of that estate. We have therefore examined these proofs for the purpose of determining whether such an amendment should be permitted. They are quite fully set out in the opinion below and a full recital of them here is unnecessary. We quite agree with the vice-chancellor that the story told by the defendant of the way in which she came into possession of the property must be rejected as false; and further, that the proofs justify

the conclusion that the property was purchased with moneys which came out of the business of Buchanan & Company. But this alone will not support the presumption that this property belongs to the estate of Dr. Buchanan rather than to the defendant.

The business was that of Buchanan & Company. The name raises the presumption that it was a partnership business. The only persons engaged in carrying it on were the doctor and the defendant. This raises the presumption that they were the partners. Most of the property was purchased by the defendant during the doctor's lifetime. The defendant presumably was entitled to half the earnings. There is nothing to show that her investments exceeded that. But if they did, there is nothing to justify the conclusion that she fraudulently and without the knowledge of her partner abstracted more than her share from the partnership funds. On the contrary, the presumption is that the excess, if any, was appropriated by her with the knowledge and approval of the doctor, particularly in view of the relation existing between them.

So, as to all investments made during the life of the doctor, there is no presumption that they were made in fraud of his rights. This includes fourteen shares of stock of the Farmers and Mechanics National Bank of Philadelphia; twenty-one shares of stock of the Kensington National Bank of Philadelphia; sixteen shares of stock of the Manufacturers National Bank of Philadelphia; six shares of stock of the Corn Exchange National Bank of Philadelphia; thirteen shares of stock of the Market Street National Bank of Philadelphia; the proceeds of the sale of the real property in the city of Brooklyn, State of New York, designated as No. 1129 Forty-second street, in said city.

As to investments made from the proceeds of the sale of the business after his death, the presumption is that, as to one-half of it, the defendant holds such proceeds in trust for the doctor's estate, for the reason that, as the doctor had a half interest (presumably) in the business, his estate was entitled to half of the proceeds of its sale.

Complainants therefore should be permitted, if they desire, to amend their bill for the purpose of applying for a receiver appointed to take possession of so much of the property as represents the one-half of such proceeds of the business, and hold the same until an administrator of the estate shall be appointed and an opportunity afforded him to litigate the question of the true ownership of this part of the property.

The decree of the court below is accordingly reversed, with costs, and the cause is remanded in order that the complainants may, if by counsel so advised, reframe their bill of complaint in accordance with this opinion and apply for a receiver to take possession of so much of such property as it shall appear are such proceeds of the sale of the business since the death of Dr. Buchanan, and to hold the same pending the appointment of an administrator who may litigate the claim of ownership of this portion of the property.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL—15.