In the matter of the estate of MARY JANE GRATTAN, deceased.

[Decided January 3d, 1911.]

1. Where a policy on the life of a husband is taken out by him for the benefit of his wife, and she dies before him, without having assigned it, her interest therein is a chose in action that belongs to her estate.

2. Under the common law obtaining in Pennsylvania, on the death of a wife, intestate and without issue. her surviving husband succeeds to the sole beneficial interest in her personalty. subject only to payment of her debts.

3. The right of the husband under the common law, on the death of his wife intestate and without issue, to her choses in action, is not contingent on his reducing them to possession during his lifetime.

4. One's personal estate is distributable according to the law of the state in which she is domiciled at her death.

5. The agreement of a surviving husband for the assignment of all his interest in his deceased wife's estate, which includes a policy on his life for her benefit, followed by payment of the consideration, is equivalent to an equitable assignment; so that on the policy afterwards maturing on the death of the husband the equitable right to the money collectible thereon is in such assignee, though the legal title be still in the estate of the wife; and. the money being paid by the insurance company to the administratrix of the wife, she receives it as trustee for the assignee.

6. Where a fund. the proceeds of a life policy. the legal title to which is in a decedent's estate, but the equitable right to which is in B., as "representative of the heirs" of said decedent, being paid by the insurance company to decedent's administratrix, is paid by her. pursuant to the decree of the probate court of the state in which deceased was domiciled. to B.. as such representative, thus uniting in him the legal and equitable titles, he. on being appointed administrator of the estate of deceased in another state, is not accountable for the money as administrator; his accounting as such being limited to the estate which comes

15

to him as administrator, even though the heirs and next of kin of deceased be the same persons, and his accountability to the heirs being a matter of separate consideration.

7. While ordinarily judgments against an administrator in one jurisdiction are not binding on an administrator of the estate of the same decedent in another jurisdiction appointed in such other jurisdiction, this rule properly applies only to judgments that manifest an indebtedness of the estate or the administrator, and does not extend to a decree settling the distribution of the surplus of the estate in the state of the domicile of deceased by the law of which the distribution is to be made; such decree being in effect an adjudication against certain claimants of distributing shares, and not involving the claims of creditors.

8. Parties who affirm the validity of a decree of a court of another state to the extent of charging one with receipt of money paid to him pursuant thereto may not deny its validity with respect to the character in which it was awarded to him; it giving him no title to the money as administrator, but as "representative of the heirs."

9. Though an allowance of a counsel fee by the orphans court to one excepting to the account of an administrator because not charging himself with a certain fund be reasonable, yet, the decree holding such fund to belong to the estate being reversed, the fee cannot be charged against it, and must be postponed in payment, even if there be funds of the estate, to the administrator's costs of his appeal.

On appeal of Anderson Bourgeois, administrator, from a decree of the Atlantic county orphans court.

*Messrs. Bourgeois & Sooy,* for the appellant.

*Messrs. Nelson B. Gaskill* and *Ralph W. E. Donges,* for the respondent.

PITNEY, ORDINARY.

The appellant, Anderson Bourgeois, as administrator of Mary Jane Grattan, deceased, late of Philadelphia, in the State of Pennsylvania, filed his final account in the orphans court of Atlantic county, whereupon Eva Smith, one of the next of kin, excepted thereto on the ground, among others, that the accountant had not charged himself with

"the sum of $505.09, which sum was ordered paid to him as the representative of the heirs of Mary Jane Grattan, deceased, by the orphans court of the county of Philadelphia, January 8th, 1903."

After a hearing of the exceptions, the Atlantic county orphans court surcharged the administrator with $428.91, which was the amount found to have been actually received by him under the order of the Philadelphia court; and awarded to the exceptant a counsel fee of $50, to be paid by the administrator out of the estate.

Other exceptions to the account were at the same time disposed of, but the matters therein referred to are not now in question.

Bourgeois, the administrator, appeals from so much of the degree as charges him with the sum of $428.91 received from the Pennsylvania administratrix, and from the allowance of a counsel fee to the exceptant.

The principal question is the propriety of the surcharge.

It appears that the evidence taken in the Atlantic county orphans court was not reported, or, if reported, was not preserved, and therefore the case was by consent of counsel laid before me without that evidence or any evidence to take its place; saving that an exemplified copy of the proceedings in the orphans court of Philadelphia county was submitted to me.

For the facts in the case I am referred to the account of Bourgeois, administrator, as originally filed; to his account as restated in accordance with the order of the Atlantic county orphans court; to the opinion delivered by the learned judge of that court; and to the proceedings of the Philadelphia court.

It thus appears that Mary Jane Grattan and her husband, Edward N. Grattan, were both residents of Philadelphia, in the State of Pennsylvania. He took out certain policies of insurance upon his life in the Aetna Life Insurance Company, payable to "Mary J. Grattan, his wife, her executors, administrators or assigns." The wife died in 1899, and immediately after her death the husband made an agreement in writing with the present appellant (who, so far as appears, had not yet been appointed administrator of her estate), described as "Anderson Bourgeois, representing the heirs of Mary J. Grattan, deceased," by the terms of which

"the said Edward N. Grattan agrees to sell and the said Anderson Bourgeois agrees to buy all the right, title and interest of the said Edward N. Grattan in the estate, both real and personal, of the said

Mary J. Grattan, deceased, excepting the Sea Isle City property belonging to the said Mary J. Grattan, deceased, for the price or sum of $125, settlement to be made within ten days from the date hereof."

The consideration money, $125, appears to have been paid by Bourgeois to Grattan twelve days later.

Subsequently Edward N. Grattan died, and after his death letters of administration upon the estate of the wife, Mary J. Grattan, were granted by the orphans court of Philadelphia to Alice Smith. It would seem that the only estate that came to her hands was the proceeds of the insurance policies. Before Edward Grattan's death these policies had been assigned to one Brush as collateral security for a loan; otherwise they remained the same as when originally issued; that is, there had been no change in the beneficiary. The insurance company paid the amount due under the policies to Alice Smith, as administratrix of the estate of Mary J. Grattan, and to Brush, the assignee, and Alice Smith, administratrix, thus received $656.68, which was paid to her by the check of the company drawn to her order as such administratrix.

Subsequently Alice Smith rendered an accounting as administratrix in the orphans court of Philadelphia county, and in the proceedings upon such accounting the question arose, to whom should the balance remaining in her hands be paid.

A certified copy of these proceedings was printed as a part of the state of the case upon the present appeal, under a stipulation signed by counsel, of which the following is a copy:

"It is objected by counsel of respondent that the adjudication upon the account of Alice Smith, administratrix of the estate of Mary Jane Grattan, deceased, filed November 14, 1902, and the opinion of Hanna, Judge of the Philadelphia Orphans Court, are irrelevant to the issues raised in the above cause; but if the Ordinary shall be of the opinion that the same are relevant to the issue, then and in that event it is stipulated and agreed that the same shall be considered as a part of the proofs in said cause."

In my opinion the proceedings in question are relevant, and they are therefore to be dealt with as a part of the proofs.

It appears therefrom that on November 7th, 1902, the account of Alice Smith, administratrix of Mary Jane Grattan, deceased,

was called for audit before Justice Penrose, and that Alice Smith, the accountant; Martha M. Grattan, administratrix of Edward N. Grattan; Eva Smith, Anderson Bourgeois, Ira A. Smith, Ida Peterson and Hattie Smith were represented by counsel. The judge found that the decedent died September 10th, 1899, intestate and without issue, leaving a husband, Edward N. Grattan, who subsequently, viz., on September 30th, 1899, assigned all his interest in her estate, real and personal, except in certain property at Sea Isle City, to Anderson Bourgeois, "representing the heirs of Mary Jane Grattan," the heirs so represented being Alice Smith and Rebecca Smith Estell, sisters, and Ira Smith, Ida Peterson, Eva Smith and Hattie Smith, children of a deceased brother, Daniel M. Smith. The account, as stated by the judge, showed a balance in the hands of the accountant amounting to $498.64, which balance, by the finding of the judge, "is awarded to Anderson Bourgeois, assignee of Edward N. Grattan, husband of the decedent." The finding of the learned judge proceeds as follows: "Edward N. Grattan died, as represented to the court, July 2d, 1901, and letters of administration upon his estate were granted to Martha M. Grattan, his daughter, on whose behalf Mr. White asked that the balance as above be awarded to her. As, however, Mr. Grattan has assigned his entire interest in his wife's estate before his death it is evident that the claim cannot be allowed. The balance was also claimed by Mr. Drovin on behalf of Eva Smith as assignee of Mary Jane Grattan, the decedent. There was an attempt to prove such an assignment, but the evidence offered utterly failed. * * * It was ordered and adjudged that the account be confirmed *nisi* on payment of clerk's fees, and distribution be made as indicated."

The exemplified record further shows that on January 8th, 1903, the matter came before another judge (Hanna, P. J.) upon exceptions to this adjudication. He held that there was no foundation for the claim that the balance in the hands of the accountant should be awarded to the administratrix of the deceased husband, saying: "It is in evidence and was not controverted that the husband of the decedent, who, under the intestate law, became entitled to all her personal estate, there being no issue, almost immediately after the death of his wife assigned all his in-

terest in her estate, real and personal, except in a certain property at Sea Isle City, to Anderson Bourgeois, representing the heirs of Mary J. Grattan, the decedent. There is therefore no good reason why upon a settlement of the estate of the wife the balance of the personal estate to which the husband would be entitled if living should not be awarded to his assignee who stands in his place and stead. It was further contended that the award should be made to the administratrix of the husband for the reason that as he was heir to his wife he was entitled under the assignment to the balance of her personal estate. But the intention of the husband was clearly to assign his interest in the estate to those persons he recognized as the heirs of his dead wife, viz., her sisters and nephew and nieces. He is presumed to know he was the sole heir under the intestate law, and if he intended to include himself his assignment fails to disclose any such intention. The instrument is to be construed in the light of all the surrounding circumstances, and we think clearly indicates the intention to be that the next of kin of the wife should take. These exceptions are also dismissed. And the distribution is accordingly amended as follows: [here follows a restatement of the account, showing a balance of $505.74]; which is awarded to Anderson Bourgeois, assignee, representing the heirs of Mary Jane Grattan, the decedent. And the adjudication as modified is confirmed."

From the findings of the learned judge of the Atlantic county orphans court it appears that of the amount thus awarded to Anderson Bourgeois as assignee, only $428.91 was received by the latter, and that this money was paid to him by Alice Smith as administratrix of Mary J. Grattan.

The learned judge, however, held—*first,* that the money thus received was a part of the estate of Mary J. Grattan; that the husband, Edward N. Grattan, never had an interest in the fund so as to assign it to Bourgeois; *secondly,* that the courts of Philadelphia had no occasion to pass upon and did not pass upon the question whether the money received by Bourgeois should be accounted for by him as administrator, or whether he was entitled to it as assignee of Edward N. Grattan; and *thirdly,* that if those courts did attempt to pass upon this question it is not *res adju-*

*dicata* because all the persons who were interested in the event were not made parties.

He therefore concluded that Anderson Bourgeois as administrator should be held accountable for the $428.91 in question.

Dealing with the first point separately, and ignoring for the moment the effect of the adjudication in Pennsylvania, it seems to me that if the money in question was a part of the estate of Mary J. Grattan it must be because it was the proceeds of choses in action (the insurance policies) to which she was in her lifetime entitled, and upon which the right of action survived to her personal representative. The policies are not in evidence before me, but such is the legal effect that all parties in interest have attributed to them; and because of this, indeed, the insurance company recognized liability to Alice Smith, administratrix of Mary J. Grattan, and thereupon paid to her the proceeds.

Accepting, as I do, that view of the insurance contracts (and no other view is suggested in argument), it follows that the policies were assignable as well before as after maturity. Mrs. Grattan might have assigned them in her lifetime (assuming, that is, that the law of Pennsylvania is in accord with our Married Women's act), although the event upon which they were to mature—the death of her husband—had not yet occurred. She having died without assigning them, the policies were a part of the assets of her estate, to be realized upon by her personal representative, either by composition with the insurance company before maturity of the contracts, by sale and assignment of the contracts, or by awaiting their maturity and then enforcing them against the company.

In *Olmstead* v. *Keyes, 85 N. Y. 593,* where a policy of insurance was taken out by a husband for the benefit of his wife, her interest in the policy was held to be a chose in action that at her death passed to him; and he having then caused it to be assigned to his second wife, and having thereafter died, it was held that she alone was entitled to the proceeds. This decision seems to me to be clearly correct. It was cited with approval and followed in principle by Vice-Chancellor Stevens in *Brown* v. *Murray, 54 N. J. Eq. (9 Dick.) 594, 599;* but in this case, because the wife, who was named as beneficiary, left a will, it was held that her

executors were entitled to the proceeds of the policy as against the administrator of the husband. See also *14 Cyc. 71.*

But by the common law, which in this respect remains in force in this state (and, as is admitted, in Pennsylvania also), upon the death of Mrs. Grattan intestate, leaving her husband surviving, he not only became entitled to administer upon her estate, but succeeded to the sole beneficial interest in her personalty, subject only to the payment of her debts. In *Admrs. of Donnington* v. *Mitchell, 2 N. J. Eq. (1 Gr. Ch.) 243,* it was laid down by Chancellor Pennington that: "On the death of a wife the husband may administer on her estate, and in that character take to himself, for his own benefit, *jure mariti,* all her personal property; and in case he dies before he shall have fully administered on such estate, his representatives are entitled to the property. If letters of administration upon the wife's estate are granted to the next of kin of the wife, they are deemed as trustees only for the representatives of the husband." (Citing cases.)

We have several other decisions to the same effect. *Nelson* v. *Nelson, 57 N. J. Eq. (12 Dick.) 118, 121; Tarbox* v. *Grant, 56 N. J. Eq. (11 Dick.) 199, 204; Wright* v. *Leupp, 70 N. J. Eq. (4 Robb.) 130, 133; Degnan's Case, 75 N. J. Eq. (5 Buch.) 197.*

The right of the husband to the wife's choses in action after her death is not contingent upon his reducing them to possession during his lifetime. His right to administer upon her estate and to take to his own use the surplus of her personalty after payment of her debts is entirely distinct from his right at the common law to reduce to possession the living wife's choses in action; failing his exercise of which right the choses in action survived to the wife at his death. *Snowhill* v. *Snowhill, 2 N. J. Eq. (1 Gr. Ch.) 36; Vreeland's Exrs.* v. *Ryno's Exrs., 26 N. J. Eq. (11 C. E. Gr.) 162; Exrs. of Henry* ads. *Dilley, 25 N. J. Law (1 Dutch.) 302.*

Mrs. Grattan having been domiciled in Pennsylvania, her personal property was distributable according to the laws of that state. *22 Am. & Eng. Encycl. L. 1355; Ennis* v. *Smith, 14 How. (U. S.) 400; Armstrong* v. *Lear, 8 Pet. (U. S.) 52, 73; Banta* v. *Moore, 15 N. J. Eq. (2 McCart.) 97, 100; Harrall* v. *Wallace, 37 N. J. Eq. (10 Stew.) 458; S. C., on appeal, sub nom.*

*Harrall* v. *Harrall, 39 N. J. Eq. (12 Stew.) 279; Normand's Admr.* v. *Grognard, 17 N. J. Eq. (2 C. E. Gr.) 425, 428; Jenkins* v. *Guarantee Trust and Safe Dep. Co., 53 N. J. Eq. (8 Dick.) 194, 202; Neilson* v. *Russell, 71 Atl. Rep. 286.*

It is admitted, as I have said, that the common law is still in force in Pennsylvania so far as concerns the husband's rights to have the personal property of the wife dying intestate, and to administer the same. And so the Philadelphia court apparently held in its consideration of the present case.

It is therefore clear to my mind that the husband not only had an assignable interest in the insurance policy after his wife's death, but had the entire beneficial interest therein, subject only to the payment of his wife's debts. As no rights of creditors are involved, we need not further refer to them.

The agreement made by the husband with Anderson Bourgeois ("representing the heirs of Mary J. Grattan, deceased"), for the assignment of all his interest in the estate, real and personal, of Mrs. Grattan (excepting the Sea Isle City property, with which we are not now concerned), followed by the payment of the consideration money, was equivalent to an equitable assignment, and included the interest of Mrs. Grattan's estate in the insurance policies.

Therefore when the policies afterwards matured by the death of Edward N. Grattan himself, the equitable right to the money collectible thereon was in Bourgeois, the assignee, although we may assume the legal title was still in the estate of Mrs. Grattan. And when the insurance company paid the amount due upon the policy to Alice Smith, the administratrix of Mrs. Grattan, she received the money as trustee for Mr. Bourgeois. Her subsequent act in paying the money over to him, pursuant to the Philadelphia decree, recognized his equitable right to receive it, and had the effect of uniting in him both the legal and the equitable titles. He thus held the money "as representative of the heirs of Mary Jane Grattan, deceased." The circumstance that he now happens also to be administrator of the estate of Mrs. Grattan in this jurisdiction is a coincidence that does not render him accountable for this money as such administrator. Her heirs may or may not be the same persons as her next of kin.

Concerning this there is no evidence before me. But whether so or not, his accounting as administrator is properly to be limited to the estate that came to his hands as such. His accountability to the heirs is a matter for separate consideration, and the orphans court has no jurisdiction over it.

I entertain no doubt of the correctness of the result thus reached; but were there doubt of it, it seems to me the matter is, for present purposes at least, concluded by the adjudication in the Pennsylvania court.

That court assumed jurisdiction over the subject-matter, and presumably had such jurisdiction, including not merely the accounting by Alice Smith of her receipts as administratrix, but the disposition to be made of the balance in her hands. Nor can I agree with the court below that all necessary parties were not before the Pennsylvania court. The record of the proceedings there, as introduced in evidence before me, is somewhat meagre, but it sufficiently shows that Alice Smith, the administratrix, was a party (and she may be taken to represent the next of kin of Mrs. Grattan as against Anderson Bourgeois' claim to a paramount title to the fund), and Eva Smith, the present exceptant and respondent, was a party; Bourgeois was a party, and also the administrator of Edward N. Grattan, with whose alleged rights, however, we have no present concern. The adjudication was in effect that while Alice Smith, administratrix, held the legal title to the fund in question, the beneficial interest was in Bourgeois, because of the assignment made to him by Edward N. Grattan, and the decree was that the money should be paid to Anderson Bourgeois "representing the heirs" accordingly.

While ordinarily it is held that judgments against an administrator in one jurisdiction are not binding upon an administrator appointed in another jurisdiction, for want of privity between them (*Story Confl. L.* § *522; Freem. Judg.* § *163; 23 Cyc. 1591*), yet I think this rule properly applies only to judgments that manifest an indebtedness of the intestate or of the administrator, and does not extend to a decree settling the distribution of the surplus of the estate in the state of the domicile; such decree being in effect an adjudication against certain claimants of distributive shares, and not involving the claims of creditors.

For, as already remarked, distribution is to be settled by the law of the domicile.

But there is a special feature that seems to conclude the present controversy, and that is that Bourgeois received the money in question pursuant to the very decree that is now sought to be overthrown. That decree gave him no title to the money as administrator, but, on the contrary, as "representative of the heirs." And it does not seem to me to be permissible for the respondents, while affirming the validity of the Pennsylvania decree to the extent of charging him with the receipt of the money, at the same time to deny the validity of the decree with respect to the character in which it was awarded to him.

The decree of the Atlantic county orphans court, so far as it charges the administrator with the sum of $428.91—the amount received from the Pennsylvania administratrix of Mrs. Grattan's estate—will be reversed, with costs of the appellant to be paid out of the estate.

As to the counsel fee of $50 allowed by the court below to the exceptant, I consider it was reasonable, provided there was any fund out of which it could properly be paid. The $428.91 in question being no part of the estate, the counsel fee must not be charged against it, and must be postponed in payment to the appellant's costs of this appeal.

# CASES ADJUDGED

IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY

## ON APPEAL FROM THE COURT OF CHANCERY, AND THE PREROGATIVE COURT.

### NOVEMBER TERM, 1910.