John I. Howe, Jr., died testate, March 2d 1929, a resident of Bergen county in this state. By his will (disregarding a specific devise of real estate not owned by decedent at his death) he gave all his estate to his wife, Flora G. Howe, and named her as executrix. Both husband and wife suffered an automobile accident wherein the husband was instantly killed and the wife died three days later without ever having regained consciousness. By her will (disregarding a specific bequest of property not owned by her at her death) all her estate was given to her husband. They had one child, Marion G. Howe, who survived. Both wills were duly probated, and Florence H. Howe (mother of John I. Howe, Jr.) was appointed administratrix cum testamento annexo in each estate.
John I. Howe, Jr., left a net estate of over $50,000, and the comptroller assessed a transfer tax of $483.28 in respect thereof, as on a transfer by his will to his wife. In the matter of the tax in the wife's estate, the comptroller appraised the net estate at some $140,000 — including therein the $50,000 above mentioned, as the value of her interest in the husband's estate — and levied tax accordingly as on a transfer of the entire estate to the daughter Marion. *Page 19 
On July 15th, 1929 — some four months after the death of the testator, but prior to the assessment and levy of the transfer inheritance taxes — the administratrix cum testamento annexo of the wife's estate executed and acknowledged an instrument in writing, whereby she, as such administratrix cum testamentoannexo, purported to renounce all her right, title and interest as such administratrix cum testamento annexo, in and to the estate of her husband. This instrument was forthwith served upon the comptroller and filed with the surrogate of Bergen county.
The administratrix cum testamento annexo of John I. Howe, Jr., appeals from the transfer tax in that estate, alleging as error the levying of tax on a transfer to the wife under the will instead of on an intestate transfer to the daughter as sole next of kin. In the wife's estate, her administratrix cum testamentoannexo appeals, alleging as error the inclusion in the wife's estate of the net value of the husband's estate.
The single basic question in both appeals (which were argued together and are herein considered together) is whether or not the husband's estate passed to his wife under his will; and the determination of this question rests upon a determination as to whether or not the "renunciation" by the wife's administratrix was effective to prevent such transfer from taking place.
It is deemed that a beneficiary under a will may refuse to accept the testamentary gift and that in such a case no testamentary transfer to such beneficiary takes place and no transfer inheritance tax can legally be levied as on such a transfer — under our statute. P.L. 1909 ch. 228 and subsequent amendments. If, therefore, in the instant case, the wife had regained consciousness and had herself, within the three days prior to her death, made an effective refusal to accept any interest under her husband's will, the appellant's contention as to each of these tax levies must needs be upheld.
All this is expressly conceded by respondent: the latter's contention is that the wife herself is the only person who could refuse to accept the testamentary gift; that she not *Page 20 
having refused to accept (notwithstanding she had no opportunity so to do by reason of her condition of unconsciousness), her acceptance is presumed; that the wife's administratrix has no power to refuse to accept the gift and hence the attempt so to do is nugatory; that the husband's estate therefore passed to the wife under his will, and the taxes in question were correctly assessed.
The precise point seems never to have been decided. Numerous authorities, however, are submitted by respondent for the principle that a right or power of election is personal and cannot be exercised by a personal representative. Many of the adjudicated cases deal with this question in connection with the right of a widow to elect whether to renounce testamentary benefactions under her husband's will in order to take her dower right or other statutory rights in the husband's property. None of the authorities cited by respondent are decisions of courts of this state; but on the other hand no authority whatever to the contrary is cited by appellant. The determination seems almost universal in the jurisdiction where the issue has been considered; and respondent argues that the present litigation involves exactly the same principle: that a testamentary beneficiary has the right to elect whether to accept or refuse the benefaction, and that that right of election is personal to the beneficiary and cannot be exercised by his or her personal representative.
It is not, and will not be, controverted that without an acceptance by the intended transferee, the intended transfer does not take place; and that the wife had the right to elect whether to accept or refuse the testamentary benefaction under her husband's will. It is equally incontrovertible that she did not in fact make any such election — that she never had the opportunity to make such election — and that in actual fact therefore she never accepted the gift. If no one but herself personally has the right to exercise that election — if it cannot be exercised on her behalf either by her personal representative or by the court (through the fiction of a presumption contrary to the known fact) — it necessarily follows that the testamentary transfer did not, and never can, take *Page 21 
place. By the same token, it likewise follows that neither did any intestate transfer take place, either to the wife or to the child, for the child is an infant of tender years, incapable of making an election.
Now it is of course an unthinkable result that the child should be deprived of the benefit of a testamentary or intestate benefaction because it is incapable of exercising an intelligent choice; so also would it be an unthinkable result that the wife should be deprived of such benefaction if, for instance, instead of having been fatally injured in the accident she had been injured in such wise as to render her incurably deprived of reason. To avoid such an impossible result, it is argued by respondent that the wife must be presumed to have accepted the testamentary gift.
It is true that there is a presumption of acceptance by a donee of a gift which is beneficial to him. Yawger's Ex'r v. Yawger,37 N.J. Eq. 216; 40 Cyc. 1893, and such a presumption is based on common sense. The instances of a donee's refusal to accept a beneficial legacy or devise must indeed be few and far between. Obviously one would never even think of the possibility. Nevertheless that presumption is not a conclusive presumption. It may be rebutted by proof showing a refusal to accept (Jarm.Wills (7th ed.) ch. 16 — at p. 531) and this also is a rational rule. By the same reasoning, however, it must also follow that the presumption of acceptance is equally rebutted by adequate proof of any facts sufficient to establish that no acceptance took place — such as the facts in the instant case, both as to the wife who was never conscious, and the child who is not sui juris.
No objection can be made to a rule of law which presumes acceptance unless satisfactory proof of non-acceptance be made. Such a rule is not only based on reason, but it is necessary in order that the facts of ownership and title to property, both real and personal, shall not be involved in continual doubt and uncertainty. But a rule of law which would presume acceptance in the face of incontrovertable proof that there was no acceptance, would assuredly be the reverse of rational, and seems neither necessary nor advisable. It would *Page 22 
in fact be nothing more nor less than an exercise by the court for the benefit of the donee, of that right of election which the court says can be exercised only by the donee personally.
It is obviously much more rational to hold that where a donee, having a right of election such as in the case at bar, has had no opportunity to exercise that right, the right may be exercised on the donee's behalf by the donee's executor, administrator, or guardian, as the case may be, with the requirement, of course, that the fiduciary must exercise that right in accordance with his honest judgment as to what is best for the benefit of the person in whose shoes he stands. Should he do otherwise he would of course be guilty of a breach of trust and incur personal liability to those injured thereby.
It must, however, be recognized that in addition, or as a corollary, to the presumption already mentioned — the presumption of the donee's acceptance of a beneficial gift in the absence of proof that he did not accept — a further presumption is necessitated by the conditions of our economic civilization and our system of property law — namely, that if such donee, having the opportunity to accept or reject such gift, fails to reject it within a reasonable time, he must be deemed to have accepted it. The title to property cannot be left uncertain indefinitely; the law does not require that acceptance be evidenced by any positive act (and it would seem quite impractical to attempt so to require); and it can only be in the rarest of instances that a donee would wish to reject a beneficial gift. There can therefore be no reasonable objection to the requirement that if he does wish to reject it he must do so by some positive, overt act, and within a reasonable time (or a time fixed by statute, as in the case of a widow entitled to dower).
Such indeed is essentially the determination in the YawgerCase, supra. A testamentary beneficiary died a month after the death of the testator. The testamentary gift was beneficial to him. Presumably he had no lack of opportunity to choose between acceptance or rejection, but he had made no act or statement to indicate the one or the other. It is held that he must be presumed to have accepted. *Page 23 
Applying these principles to the case at bar, it will be seen that the wife neither accepted nor rejected the husband's testamentary benefaction, because she never had the opportunity so to do; that her right of election therefore devolved upon her administrator cum testamento annexo; that the administrator did not reject the gift within a reasonable time (there was no attempt at rejection for four months after the death of testator, and the question as to the beneficence of the gift was in nowise in doubt; it was a gift of the entire net estate of some $50,000 with no conditions or encumbrances); the administrator therefore, by such failure to reject within a reasonable time, accepted the gift on behalf of her intestate and it thereby passed under the husband's will and accordingly, under the statute, became subject to tax as a transfer to the wife.
It is true that under section 16 of the Dower act (2 Comp.Stat. p. 2048), a widow is given six months from the probate of the will to elect as between dower or testamentary gift. Such an election may well need a fairly considerable time for consideration and determination; but no such election was involved in the present case. The husband's estate comprised no realty; and even if it had, the possibility of dower had terminated by the wife's death. The statute therefore does not apply, either directly or by analogy, and it is obvious that four months is far more than a reasonable time for the administratrix to decide the simple question of election as between accepting or rejecting an unencumbered gift of some $50,000.
The gift having been accepted, the subsequent attempt by the administratrix to reject it was invalid and ineffectual. Whether or not a donee who has once made an acceptance or a rejection can under any circumstances, revoke or alter the same without the aid of a court of equity, need not here be decided or considered. It is sufficient to hold that no such revocation can validly be made in any event unless there be proper and sufficient ground therefor. None such existed in the present case: on the contrary the attempted rejection would constitute a breach or trust by the administratrix, because *Page 24 
her right to make the election on behalf of her intestate was coupled with a duty to exercise that right, in accordance with her honest judgment as to what was best for the interests of the intestate whom she represented. Obviously the attempted rejection was not in the interest of her intestate's estate: it was in the interest of a beneficiary of her intestate.
No other reason can be ascribed for the rejection than a desire thereby to benefit the daughter by avoiding the transfer tax. It may be assumed that the mother herself might validly have rejected the gift for that reason and purpose; but it cannot be said with certainty that she would have done so, even if she had had the opportunity and had known that her death would occur within a day or two. In any event, the administrator had no right to do so, and hence her attempt so to do, after a prior acceptance by acquiescence for more than a reasonable time, can be accorded no force or effect.
The tax in each estate will be affirmed, with costs. *Page 25