ESTATE OF WALTER DAWSON, DECEASED, WALTER DAWSON III, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1728–70. Filed March 20, 1972.

*Raymond J. Lamb*, for the petitioner.
*William M. Gross*, for the respondent.

OPINION

TANNENWALD, *Judge:* Respondent determined a deficiency in petitioner's estate tax in the amount of $51,946.26. The sole issue remaining for our determination is whether, at the time of his death, decedent possessed any of the incidents of ownership in certain policies insuring his life within the meaning of section 2042.[1]

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise specified.

All of the facts have been stipulated. The stipulations, together with the exhibits attached thereto, are incorporated herein by this reference.

Petitioner is the executor of the Estate of Walter Dawson, who died on October 11, 1965. His legal residence at the time of filing the petition herein was Somerset, N.J. The estate tax return was filed with the district director of internal revenue, Newark, N.J.

The decedent and his wife, Rose M. Dawson (hereinafter Rose), died as a result of an automobile accident that occurred on October 11, 1965, at approximately 12:40 p.m. Rose died shortly thereafter at 1 p.m. and decedent died an hour later at 2 p.m., without ever having regained consciousness after the accident. Prior to their deaths, decedent and Rose maintained their residence in Toms River, N.J.

Rose died testate and her will was admitted to probate by the surrogate of Ocean County, N.J. She named decedent as her executor and Walter Dawson III as alternate executor in the event that decedent was unable to serve. Letters testamentary under her will were issued to Walter Dawson III, who qualified, undertook, and has since that time been performing the duties of said office.

Rose's will provided, in pertinent part, as follows:

First, after my lawful debts are paid, I give, devise and bequeath all of the rest, residue and remainder of my property of whatseover kind or nature and wheresover situate or being of which I may die seized or possessed or to which I may be entitled to my husband, Walter Dawson.

Other than a requirement of survivorship, the will contained no conditions precedent to the vesting in interest of Rose's residuary estate in decedent.

Immediately prior to her death, Rose owned all of the incidents of ownership in certain life insurance policies on the life of decedent. The policies referred to and their respective values for estate tax purposes on the applicable valuation date are as follows:

| Name of company | Policy No. | Amount |
|---|---|---|
| Aetna Life Insurance Co | N1479398 | $4,294.68 |
| Aetna Life Insurance Co | N1479398 DI | 2,500.00 |
| Connecticut General Life Insurance Co | 1061718 | 7,647.04 |
| Life Assurance Co. of Pennsylvania | 5901133 | 50,000.00 |
| Life Assurance Co. of Pennsylvania | 61L1222 | 28,841.55 |
| Prudential Insurance Co. of America | 17813845 | 8,566.33 |
| | | 101,849.60 |

Rose was the principal beneficiary of the above policies. Since she predeceased the insured, the proceeds were paid to the alternative beneficiaries named in the policies. Fifty percent of the proceeds went to decedent's children by a prior marriage and fifty percent to four nieces of Rose.

At the time of decedent's death, the aggregate cash value of the aforementioned policies was $37.54. There was a premium obligation outstanding and unpaid of $1,158.45, thereby creating a net cash value of minus $1,120.91.

The sole question herein is whether, under section 2042(2),[2] the proceeds of the aforesaid life insurance policies are includable in decedent's gross estate.[3]

It is clear that the term "incidents of ownership," as used in section 2042, has far broader connotations than ownership of the policy in the technical legal sense. The term was first embodied in section 404 of the Revenue Act of 1942, which amended section 811(g) of the Internal Revenue Code of 1939. The accompanying committee reports provide an illustrative, but not exclusive, list of "incidents of ownership," which has been incorporated by respondent in section 20.2042-1 (c)(2), Estate Tax Regs.[4] See H. Rept. No. 2333, 77th Cong., 2d Sess., p. 163 (1942), 1942-2 C.B. 491. S. Rept. No. 1631, 77th Cong., 2d Sess., p. 235 (1942), 1942-2 C.B. 677.

It is also clear that when Congress, in enacting section 2042 of the 1954 Code, eliminated "payment of premiums" as a factor in determining the includability of life insurance proceeds in the gross estate, leaving "incidents of ownership" as the sole criterion, it was attempting to focus on the power to dispose of property. *United States* v. *Rhode Island Hospital Trust Co.*, 355 F. 2d 7, 10 (C.A. 1, 1966); *Estate of James H. Lumpkin, Jr.*, 56 T.C. 815, 822, 828 (1971), on appeal (C.A. 5, Nov. 17, 1971); H. Rept. No. 1337, 83d Cong., 2d

---

[2] SEC. 2042. PROCEEDS OF LIFE INSURANCE.

The value of the gross estate shall include the value of all property—

\*    \*    \*    \*    \*    \*    \*

(2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. \* \* \*

[3] Respondent has made no claim that decedent possessed any reversionary interest in the policies either as that term is used in sec. 2042(2) or so as to bring sec. 2037 into play. In any event, the stipulation that Rose "owned all of the incidents of ownership" in the policies would appear to relegate decedent's interest to a mere expectancy of inheritance as Rose's husband, which is insufficient. Sec. 20.2037-1(c)(2), Estate Tax Regs. Nor has respondent claimed that sec. 2033 has any application. We note that it has been held that the special provision dealing with insurance controls over the provision dealing with the includability of property generally where insurance on the life of the decedent is concerned. *Singer* v. *Shaughnessy*, 198 F. 2d 178, 181 (C.A. 2, 1952).

[4] Sec. 20.2042-1 Proceeds of life insurance.

(c) Receivable by other beneficiaries. \* \* \*

(2) For purposes of this paragraph, the term "incidents of ownership" is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. Similarly, the term includes a power to change the beneficiary reserved to a corporation of which the decedent is sole stockholder.

Sess., pp. 91, A316–A317 (1954) ; S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 124, 472–473 (1954). See also *Chase Nat. Bank* v. *United States*, 378 U.S. 327 (1929).

Both parties agree that the nature of decedent's interest in the life insurance policies involved herein should be determined under New Jersey law. Respondent's position is that decedent, as residuary legatee under Rose's will, acquired a vested interest in the policies at the time of Rose's death, and that said interest carried with it the requisite incidents of ownership, including the right to name the beneficiaries thereunder. Petitioner concedes that decedent's rights as residuary legatee were vested in interest at the time of Rose's death. He argues, however, that, under the law of New Jersey, legal title to all personalty owned by a testatrix passes to her executor as of the moment of death and that decedent's rights as legatee in any personalty as such were inchoate in nature until administration of the estate had been completed.

In approaching our decision herein, we think it important to note what this case *does not involve*. First, we do not have a situation where the decedent possessed any incidents of ownership in a fiduciary capacity. Clearly, he did not qualify as executor and, under the circumstances, it is clear that he never could have qualified prior to his death. Consequently, we are not faced with the issue which confronted us in *Estate of Harry R. Fruehauf*, 50 T.C. 915 (1968), affd. 427 F. 2d 80 (C.A. 6, 1970), and, in any event, respondent makes no claim based upon any powers decedent would have possessed had he qualified as executor.[5] Compare *Estate of Hector R. Skifter*, 56 T.C. 1190, 1197 (1971), on appeal (C.A. 2, Feb. 1, 1972).

Second, Rose died testate, the provision in her will in favor of decedent was a residuary and not a specific legacy, and the property involved was personalty and not realty. Consequently, we need not explore the nuances of devolution of title and rights, which might be involved if any of such other factors were present. Compare *Hardenbergh* v. *Commissioner*, 198 F. 2d 63 (C.A. 8, 1952) ; *Brown* v. *Routzahn*, 63 F. 2d 914 (C.A. 6, 1933) ; *Estate of Anna Hart Kinney*, 39 T.C. 728, 732 (1963) ; *Hayes* v. *Hayes' Ex'x*, 45 N.J. Eq. 461, 17 Atl. 634 (Ch. 1889), affirmed per curiam sub nom. *Hayes* v. *Berdan*, 47 N.J. Eq. 567, 21 Atl. 339 (Err. & App. 1891) ; see 5 Clapp, New Jersey Practice, Wills and Administration, sec. 391, p. 571 (3d ed. 1962).

Finally, we are not concerned with whether the decedent's rights in Rose's residuary estate were sufficiently vested "in interest" so that

---

[5] Although a named executor derives technical title to personalty upon the instant of the testator's death, he is an officer of the court, his title is subject to defeasance *ab initio*, and he acquires his powers to act only upon the issuance of letters testamentary by the court. See 6 Clapp, New Jersey Practice, Wills and Administration, sec. 681, p. 237, and sec. 1022, p. 566 (3d ed. 1962).

his claim with respect thereto could not be defeated by his early death. Clearly, they were so vested.[6] The question herein is whether his rights were sufficiently vested "in possession" so as to justify the conclusion that he "*possessed at his death* any of the incidents of ownership" in the policies. (Emphasis added.) Sec. 2042. The Supreme Court of the United States has defined the applicable test as depending upon "a general, *legal power* to exercise ownership." (Emphasis added.) See *Commissioner* v. *Noel Estate*, 380 U.S. 678, 684 (1965).[7]

Against the foregoing background, we proceed to an examination of New Jersey law to determine what "legal power," if any, decedent possessed to effect the disposition of the economic benefits provided by the policies in question.

In describing the role of an executor and the purpose of administration, the highest court of New Jersey has said:

One definition of an executor is "that he is one to whom a testator has given his goods, chattels, and personal estate, for the purpose of paying all his debts; * * *." Farr v. Newman, 4 T.R. 621, 100 Eng. Rep. 1209, 2 Eng. Rul. Cas. 135 (1792). The purpose of administration is to collect and protect the assets and pay the debts, funeral expenses, and all obligations falling upon the estate, and *then* to make proper distribution among those entitled to the residue, under the will or by law, as the case may be; and to this end the title to the personal property in possession or right of action vests in such personal representative in trust. [*In Re Sapery*, 28 N.J. 599, 147 A. 2d 777, 782 (1959). Emphasis added.] [8]

The decided cases clearly establish that, under New Jersey law, a residuary legatee acquires only a qualified equitable right to what remains of the estate after payment of the just debts, funeral expenses, and administration expenses of the decedent and that this right is inchoate in nature prior to the completion of administration. *In Re Sapery*, *supra*; *Buchanan* v. *Buchanan*, 75 N.J. Eq. 274, 71 Atl. 745 (Err. & App. 1909); *Montclair Nat. Bank & Trust Co.* v. *Seton Hall Col. of M.*, 96 N.J. Super. 428, 233 A. 2d 195 (App. Div. 1967); *Ryder* v. *Ryder*, 136 N.J. Eq. 279, 41 A. 2d 278 (Ch. 1945); *Hayes* v. *Hayes' Ex'x*, *supra*; *Miller* v. *Henderson*, 10 N.J. Eq. 320 (Ch. 1855); see *Phair* v. *Federal Deposit Ins. Corporation*, 74 F. Supp. 693, 696 (D.N.J. 1947); 5 Clapp, New Jersey Practice, Wills and Administra-

---

[6] The distinction between vesting "in interest" and vesting "in possession" has apparently eluded respondent; it is clearly delineated in one of the principal cases upon which he relies. *Montclair Nat. Bank & Trust Co.* v. *Seton Hall Col. of M.*, 96 N.J. Super. 428, 233 A. 2d 195 (App. Div. 1967). See p. 842 *infra*.

[7] We also approach our decision herein without regard to the physical and mental incapacity of the decedent to exercise whatever power he may be found to have had. Compare *Commissioner* v. *Noel Estate*, 380 U.S. 678 (1965); *City Bank Co.* v. *McGowan*, 323 U.S. 594 (1945); *Hurd* v. *Commissioner*, 160 F. 2d 610 (C.A. 1, 1947), affirming 6 T.C. 819 (1946).

[8] Compare *Bernie C. Clinard*, 40 T.C. 878, 881 (1963), where we said:

"an estate is a separate legal and taxable entity. The relevant property, if it passed to the donee's estate, would be subject to the decedent's debts, [and] would pass through an administration period under relevant State law * * *"

tion, sec. 391, p. 571 (3d ed. 1962); 6 Clapp, New Jersey Practice, Wills and Administration, sec. 1022, pp. 565–567 (3d ed. 1962); 6 Page, Wills, sec. 59.2, pp. 383–384 (Bowe-Parker rev. 1962). Compare *In Re Grattan's Estate*, 78 N.J. Eq. 225, 78 Atl. 813 (Prerog. 1911), where the wife owned the insurance and *died intestate*, the court holding that the rights passed to the surviving husband as the person entitled to administration.

The New Jersey cases relied upon by respondent are clearly distinguishable. In *Montclair Nat. Bank & Trust Co.* v. *Seton Hall Col. of M., supra*, the issue was whether the legatee's rights vested *in interest*, not whether they vested *in possession*. The same issue was involved in *In Re Howe's Estate*, 112 N.J. Eq. 17, 163 Atl. 234 (Prerog. 1932). Respondent's argument that New Jersey law does not favor leaving title to property in limbo is beside the point. That axiom is applied in the context of determining whether there has been a vesting in interest and has no application to the issue herein, namely, whether possession of, ownership of, and power of disposition over the insurance policies devolved upon decedent prior to his death. See fns. 4, 5, and 6 *supra*. In *Hayes* v. *Hayes' Ex'x, supra*, the court did no more than hold that a legatee of specific property, i.e., a debt owed to decedent, could under certain circumstances compel the executor to proceed to collect the debt.[9] See 5 Clapp, New Jersey Practice, *supra*.

We hold that where, as is the case herein, a decedent at the time of his death neither has ownership of the policies (in the "technical legal sense") nor possesses any of the substantive incidents of ownership, i.e., the powers of disposition, section 2042 is inapplicable.

To reflect certain concessions by the parties,

*Decision will be entered under Rule 50.*

---

[9] Under the circumstances of this case, no executor of Rose's estate was or could have been appointed prior to the death of the decedent herein. Thus, even if he had a right to compel the executor to exercise any incident of ownership in the policies, he could not have exercised such right at any time prior to his death. See fn. 5 *supra*.

