WILLIAM H. YAWGER's executor

*v.*

ANDREW C. YAWGER et al.

1. The testator devised to his son a farm, for which the son was to pay $80 per acre. He also gave to the son one-seventh of his entire estate. The son dying soon after the testator, and without having expressed any intention as to his election—*Held*, that the presumption is that he elected to accept of the provisions of the will in his behalf, because beneficial to him.—*Held, also*, that the payment required is a lien on the land, which, if not discharged by the heirs-at-law of the devisee, can be enforced by the executor.

2. Where a testator directs legacies to two of his children, to be invested and the interest paid to them, and legacies to five without any qualification, except this general one—" Should any of my children die not leaving lawful issue, the shares that would be due to them to be equally divided among my living children and the survivors of them "—*Held*, that the qualification as to the five last named refers only to the period of distribution.

3. The court prefers such a construction as will prevent a partial intestacy.

4. He who accepts a benefit under a will must bear the burden imposed.

*Mr. H. A. Fluck* and *Mr. J. A. Bullock,* for complainant.

*Mr. J. N. Voorhees,* for the administrator and heirs-at-law of John C. Yawger, deceased.

*Mr. W. C. Parker,* for Andrew C. Yawger et al.

BIRD, V. C.

The bill shows that William H. Yawger died, leaving his last will, in and by which he provided for the payment of his debts; gave to his wife the interest of $8,000 during her life; devised to his son John C. a farm of one hundred and three acres, " by his allowing and paying for the same the sum or price of $80 per acre;" devised to his son William H. another farm, by his paying $100 per acre; directed his executors to secure the $8,000 above named on the said two farms, which $8,000 was to be divided amongst all his children after the widow's death; orders his executors to divide all his estate equally between his children; the shares of Andrew and Peter to be placed at interest, and the interest to be collected and paid to him, and after his death the principal to be paid to his children; gives to his daughters, Sarah, Catharine and Mary, and to his sons, John C. and William H., each the one-seventh part in so many separate paragraphs, and then says:

"Should any of my children die not leaving lawful issue, the shares that would be due to them to be equally divided between my living children and the survivors of them."

John C. and William H. were appointed executors.

The testator died September 11th, 1882, and his son John C. October 6th following. The death of John C. left the title to the land devised to him in so much uncertainty as to move the executor to ask this court for instructions in that particular, and also with respect to the disposition to be made of the legacies given to Sarah, Catharine, Mary, John C. and William during their lives. It is alleged that while John C., in his lifetime, did not reject the provisions of the will in his behalf, he did not accept them; in other words, he made no positive election.

It was suggested that because John did not in some positive way signify his acceptance of the devise of the land and the bequest of the legacy, that the title never descended to him, but was, by force of law, cast upon the heirs-at-law of the testator. I think this view is erroneous. If controlling, very great embarrassments must ensue in the administration of the estate; if

---

this devise does not prevail, then, as to that farm, the testator died intestate.

Now the law prefers a construction which will prevent a partial intestacy. *Vernon* v. *Vernon, 53 N. Y. 351.*

The devise and the legacy to John were beneficial to him. He must therefore be presumed to have accepted them. *Best on Ev.* § *343.* "A gift imports a benefit, and an assumption to take a benefit may well be presumed." *Ibid.*

Again, supposing John did not regard the devise as a benefit, the legacy certainly was, and the law would not allow him to reject the former and accept the latter. "He who accepts a benefit under a deed or will must adopt the whole contents of the instrument, renouncing every right inconsistent with it." *1 Jar. on Wills 384; Talbot* v. *Earl of Radnor, 3 M. & R. 254; 2 Wms. on Exrs. 1242; Vernon* v. *Vernon, 53 N. Y. 351; Van Duyne* v. *Van Duyne, 1 McCart. 49; Stevenson* v. *Brown, 3 Gr. Ch. 503.*

Under this very reasonable and reliable principle, if the court were to hold that John C. refused to accept the devise, it would also be obliged to hold that he rejected the whole will, and consequently that his children can now claim no share of their grandfather's estate at the hands of the executors. Fortunately, the law has long been so clearly pronounced that I am free from enforcing any such palpable injustice.

Therefore, I conclude that the title to the farm devised to John C. vested in him, and that upon his death it descended to his heirs-at-law, subject to the burden imposed by the will. It is liable in their hands to the payment of the $8,000. And there is no difficulty in the way of the executor proceeding to recover it. *Skillman* v. *Van Pelt, Sax. 511.* If the heirs-at-law of John C. do not pay that sum, the executor can file a bill in this court to enforce the payment. In my judgment, he has not the power to sell under the will. This court can direct a sale to enable the executor to carry out the provisions of the will.

It is urged that, as the law is declared in *Rowe's Exrs.* v. *White, 1 C. E. Gr. 411,* and in *Jones's Exrs.* v. *Stites, 4 C. E. Gr. 324,* the principal of the legacies to the daughters and to John and William, are not to be paid to them, but are to be in-

vested and the interest thereof, only, paid to them.   The case of
*Rowe's Exrs.* v. *White,* and all the cases referred to in that case,
and in *Jones's Exrs.* v. *Stites,* make it plain that if a contrary in-
tention appears, that intention must prevail.   I think there is
that intention in this case very clearly expressed.   He first di-
rects that the shares to Andrew and Peter shall be invested on
bond and mortgage for life, and the interest paid to each, and at his
death, the principal to his children, and then says with reference
to the balance of his estate and his other five children :  " To my
daughter Sarah I give and bequeath the one-seventh part," using
similar language in separate clauses in gifts to the other four,
adding :

" And should any of my children die not leaving lawful issue, the shares that
would be due to them to be equally divided among my living children and the
survivors of them."

I think it is plain that the testator did not mean to suspend
the payment of the principal in the latter case beyond the period
of distribution.   *Hawkins on Wills 259 ; Williamson* v. *Cham-
berlain, 2 Stock. 373.*

Under these authorities, in my judgment, the language of the
testator with respect to the period of payment of the legacies
given to the daughters and to William and Mary, refers to the
time of the distribution thereof, and that those who were living
at that time take absolutely.