NEW JERSEY SUBURBAN WATER COMPANY, A CORPORA
TION, PLAINTIFF-RESPONDENT, v. TOWN OF HARRI
SON, DEFENDANT-APPELLANT.

Submitted January 18, 1938—Decided August 11, 1938.

Before Justices CASE and DONGES.

For the plaintiff-respondent, *George W. C. McCarter*.

For the defendant-appellant, *Michael J. Bruder* and *Anthony P. Kearns*.

The opinion of the court was delivered by

CASE, J.  Plaintiff, a water utility, contracted in 1903 with defendant, one of the municipal corporations of the state, to deliver to defendant, over a term of years and at a named rate, the town water supply, distribution to consumers to be made by the defendant.  In 1924 the parties entered into an extension and supplemental agreement, in force during the period sued upon, renewing and continuing the terms of the earlier agreement "with the exception that the price to be paid by the Town for all water supplied by the company to the Town during the said additional period of fifteen years herein agreed upon, shall be at the rate of One Hundred Four and 25/100 ($104.25) Dollars per million gallons instead of Eighty-two and 50/100 ($82.50) Dollars per million gallons [the amount fixed under the agreement of September 15th, 1903], but subject, however, to the right and privilege for either the Company or the Town at any time during the said additional term of fifteen years to apply unto the Board of Public Utility Commissioners of the State of New Jersey or any other State Board having jurisdiction over the same, to change the said rate for water which is being fixed under this agreement by the parties hereto."  After the making of the extension agreement, but before the event next mentioned, the town made application for and received from the Board of Public Utility Commissioners an order reducing the water rate from $104.25 to $99 per million gallons.  On April 30th, 1936, the company filed with the Public Utility Commissioners a lengthy petition, simultaneously serving a copy upon the municipality, which contained as paragraph 2 this:

"The Schedule of rates presently effective is $99.00 per million gallons. Your petitioner as of June 1st, 1933, will increase its rate to the sum of $151.91 per m. g.;"

And as its closing paragraph this:

"Your petitioner hereby files its schedule effective June 1st, 1936, of a rate of $151.91 per million gallons, and prays that the same will be fixed and allowed by your Honorable Board."

This and the other data contained within the petition was in compliance with the board "Conference Ruling Number Fifteen Applying to Changes in Rates by Public Utilities," one of the regulations set up by the ruling being that written notice containing the information therein required should be mailed to the office of the board at least thirty days prior to the date when the proposed change of rate was to be made effective. Section 17(h) of the act concerning public utilities, chapter 195, *Pamph. L.* 1911, as amended by chapter 150, *Pamph. L.* 1926, provides that:

"When any public utility as herein defined shall increase any existing individual rates, joint rates, tolls, charges or schedules thereof * * * the board shall have power either upon written complaint or upon its own initiative to hear and determine whether the said increase, change or alteration is just and reasonable. * * * The board shall have power pending such hearing and determination to order the suspension of the said increase, change or alteration until the said board shall have approved said increase, change or alteration, not exceeding three months. If such hearing shall not have been concluded within such three months, the board shall have power during such hearing and determination to order a further suspension of said increase, change or alteration for a further period not exceeding three months. It shall be the duty of the said board to approve any such increase, change or alteration upon being satisfied that the same is just and reasonable."

Up to May 3d, 1937, when the summons in the present suit issued, there had been no order by the board either granting, denying or suspending the proposed increase. The first count

of the complaint seeks to recover at the increased rate for water supplied from January 1st, 1937, to March 31st, 1937. There was a second count upon *quantum valebat* which appears to have been abandoned.

Judge Porter, sitting without a jury, found as a fact that there were no acts of waiver or estoppel by the plaintiff and that the document filed April 30th, 1936, was filed as a schedule of increased rates and as a matter of law that the schedule became effective for the reason that there was no action of suspension taken by the board. Defendant had paid for the quantity sued upon up to the sum called for by the former rate. Judgment went against defendant for the balance, namely, $14,020.83 and costs. Defendant appeals.

The points presented by appellant go to the court's denial of the defendant's motion "for a directed verdict" and to several evidence rulings. We find no error in the latter.

Defendant's motion for a "directed verdict" was, we assume, disposed of by the trial court as a motion for a ruling that upon all of the evidence the plaintiff, as a matter of law, was not entitled to recover.

There are two questions that deserve consideration: the one a mixed question of law and fact, namely, whether the plaintiff did that which under the statute and the board's conference ruling number fifteen was a filing of an increased rate, and the other a question of law, namely, whether plaintiff, in view of its contract, was authorized by the statute or permitted by the constitution to increase its rate against the defendant in that manner.

The statute does not direct the procedure. Specifically, it gives (section 11) to the board the power to make all needful rules for its government and other proceedings not inconsistent with the statute. Conference ruling number fifteen is obviously intended to control the filing by utilities of changes in their rates; it is so entitled—"In the Matter of Filing Changes in Rates by Public Utilities." We find no essential requirement therein that is not met by the document filed on April 30th, 1936. That paper contains, twice, the statement that on June 1st, 1936, the utility would increase

its rate to the named figure. We conclude that the filing of the petition served as a filing of the increased rate schedule.

It is established that the state has sovereign power to fix just and reasonable utility rates regardless of a contract between the parties and that when the state, through its board of utility commissioners, exercises its sovereign power over rates, the contract rights of the parties must yield. *Hackensack Water Co.* v. *Public Utility Board,* 96 *N. J. L.* 184. What has not been decided in this state is whether an increase of rate filed by a utility without suspension or other adverse order by the board takes comparable place with a board order as an exercise of the sovereign power; and this becomes a matter of statutory construction, for we observe no reason why the legislature may not adopt as its own the posture of the board in permitting a rate to become effective when it has the facts before it or within its reach and may, by a written word, undo the efficacy of the filed schedule.

The question is not without its difficulties. The attorney of the board made the statement to the trial court that there were two methods by which rates might be increased: "first, by filing a revised schedule of increased rates. That is one form. If the Board does not suspend those rates, then, ultimately, within the time indicated, those rates become what is known as effective rates. The second method is by filing a petition asking the Board to investigate and to fix an increased rate." Clearly the board has recognized the filing of a rate schedule by a utility, when no order of suspension follows, as a lawful and effective means of changing the theretofore existing rate. The Utilities act has been on the books for twenty-seven years. How many instances there may be of the changing of contract rates by the filing of new and unsuspended schedules and what unsettlement of incidents heretofore thought to be closed would be effected by a voiding of the existing practice, we do not know, but we consider that under the circumstances no overturn of the accepted construction of the law should be made upon a nice balancing of the argument.

Our statute gives little help. The only language in our

decisions that seems to have a direct bearing is that of our late Chief Justice Gummere in the Hackensack Water Company case, *supra,* wherein it was said that "it may be conceded that neither the city of Hoboken nor the water company can alter this contract without the consent of the other party to it * * *." That statement was not essential to the decision of the case and seems to us to have been intended as a concession made for the purposes of the argument and not as a pronouncement of the law. The United States Supreme Court recently decided the case of *Midland Realty Co.* v. *Kansas City Power and Light Co.,* 300 *U. S.* 109; 81 *L. Ed.* 540, wherein two sets of rates, one a schedule filed by the utility and the other fixed by the public service commission, were made to apply in consecutive periods, both rates being increases over those fixed by contract, and the opinion holds that:

"It is clear that, as against those specified in the contract here involved, the rates first filed by plaintiff and those promulgated by the commission in accordance with the statute have the same force and effect as if directly prescribed by the legislature."

The position strongly taken in the instant case is that both the municipality and the board were misled by the apparent purpose of the utility not to put any new rate into operation until the board should render its decision, an act which appears from the record to have been done at the time of the trial by retaining the old rate. But that goes into the questions of estoppel and of waiver which were matters of fact decided by the trial court adversely to the appellant's contention and therefore not grounds for appeal.

We conclude that the judgment below should be affirmed.