7 N.J. Super. 584 (1950)
72 A.2d 414
DONALD E. LAWES, AS EXECUTOR OF THE LAST WILL AND TESTAMENT OF MABEL L. JONES, DECEASED, PLAINTIFF,
v.
KATE D. LYNCH AND FRANK F. WHITFIELD, AS SUBSTITUTED ADMINISTRATORS, ETC., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Submitted February 28, 1950.
Decided March 28, 1950.
*588 Messrs. Applegate, Foster, Reussille, Cornwell & Green, for whom appeared Mr. Harvey G. Hartman, for the plaintiff.
Messrs. Kalisch & Kalisch, for whom appeared Mr. Harry Kalisch, for the defendants.
ROGERS, J.S.C.
This is a suit for construction of a will and it is submitted for decision upon the pleadings and stipulation of facts. The primary and substantial question is whether the donees of the residuary estate in remainder took jointly as a class or severally as tenants in common.
The pertinent facts in this case are that Evan F. Jones died testate on April 6, 1935, leaving surviving Mabel L. Jones, his widow, and Ella Whitfield (otherwise known as Eleanor Whitfield Simpson) and Kate D. Jones Lynch, his sisters. Testator left no issue; his father, Lewis D. Jones, predeceased him in 1906. The will of Evan F. Jones, dated September 17, 1898, was admitted to probate and his widow Mabel was appointed and qualified as executrix thereof. The estate comprised personalty except for one parcel of real estate of which testator became seized during coverture. The will provided a legacy of $5,000 and a life estate in all of the residue for his widow. These bequests to the widow were made and conditioned to be received by her in lieu of dower. The will further provided that upon the death of his widow the remainder should pass to his surviving children, the representatives of any deceased child to have the parent's share. Then follows the clause with which we are principally concerned:
"FOURTH: After the death of my said wife if there be no child or children, or representatives of any deceased child or children entitled to receive my estate under and according to the terms of the third clause of my will, then I give, devise and bequeath all my estate, both *589 real and personal, in whatever it may consist and wherever situate, unto Ella Whitfield, my sister, Kate D. Jones, my sister, and Lewis D. Jones. my father, to be divided equally among them to them and their heirs and assigns forever."
In addition to the $5,000 gift of corpus, Mabel F. Jones enjoyed, until her death on August 5, 1946, her life estate under the residuary bequest in her husband's will. The inheritance tax report which she filed as executrix of her husband's estate lists decedent's two sisters, Ella Whitfield Simpson and Kate D. Jones Lynch, as residuary remaindermen.
Plaintiff as executor of the estate of said Mabel F. Jones claims from the substituted representatives of the estate of Evan F. Jones one-third of the remainder of the residuary, upon the theory that the gift to Lewis D. Jones lapsed by reason of his death in the lifetime of testator and that, to this extent, testator died intestate with the result that his wife, as next of kin, succeeded thereto under the statute of distribution. In opposing this claim, defendants contend that the bequest of the remainder of the residuary estate was a gift to a class (testator's father and two sisters) which passed in its entirety to the members of the class who survived testator. Additionally, waiver and estoppel are pleaded as barring plaintiff's claim because (1) Mabel F. Jones failed to take possession for herself of that interest in the estate while it was under her administration, and (2) as executrix, she reported for inheritance tax purposes her interest in the estate to be the $5,000 legacy and the life estate in the residuary, with the remainder interest in testator's two sisters.
Literally the testator does not designate a class of donees, nor does he by express terms provide for survivorship amongst the individually named donees. By established rules of construction the gift of the remainder of the residuary estate to the father and sisters, by name, to be divided equally among them, presumptively created a common tenancy. Dildine v. Dildine, 32 N.J. Eq. 78 (Ch. 1880); Hand v. Marcy, 28 N.J. Eq. 59 (Ch. 1877). The phrase "to them and their heirs and assigns forever," coupled to a gift to named individuals, are words of limitation. So used, they do not admit *590 of a construction which will permit heirs and assigns to take, in substitution, for a named donee who predeceases the donor. Hand v. Marcy, supra; Zabriskie v. Huyler, 62 N.J. Eq. 697 (Ch. 1901); affirmed, 64 N.J. Eq. 794 (E. & A. 1902); King v. King, 125 N.J. Eq. 94 (E. & A. 1939).
The presumption, invoked in the construction of wills, that a gift to named individuals, in equal shares, excludes the element of survivorship is rebuttable, however, and stands or falls upon the ultimate determination of testator's intention expressed in the will, aided by available competent evidence. Unless that presumption is successfully rebutted in the instant case, partial intestacy must follow.
No citation of authority is necessary to support the argument of the defendants that such construction should be placed upon provisions of doubtful meaning as will avoid intestacy. But this doctrine may not be invoked in the absence of a conflict in the will itself. If a testator has chosen apt and clear language to express his will, a court may not violate his solemn testament by the alteration of, or addition to, any of its provisions, under the guise of construction, even in an endeavor to avoid intestacy. A testator is presumed to know the law; and if the legal effect of his expressed intent is intestacy, it will be presumed that he designed that intent. Maxwell v. Maxwell, 122 N.J. Eq. 247 (Ch. 1937).
Defendants argue that the form of the will herein shows that testator proposed to dispose of his entire estate, and that the provision for the widow indicates testator's intention that it should be exclusive of any further interest.
It is settled in this State that in cases of partial intestacy, words of exclusion or disinheritance contained in a will have no effect upon the right of an heir or next of kin to take under the statutes of descent or distribution. A testator's intention is of no force in such case; he can disinherit his heirs and next of kin only by effectively devising and bequeathing his property to others. It is the law, not the testator, that confers the right of succession and determines who shall take the property of which a decedent is intestate. *591 Skellenger's Executors v. Skellenger's Executor, 32 N.J. Eq. 659 (Ch. 1880); Nagle v. Conard, 79 N.J. Eq. 124 (Ch. 1911); affirmed, 80 N.J. Eq. 252 (E. & A. 1912); Maxwell v. Maxwell, supra.
It is also submitted by defendants that the provision for substitution in the case of deceased children, and the absence of such a provision in the gift to his father and sisters, especially in light of the fact that testator permitted his will to stand unchanged for nearly 29 years after his father's death, when considered together, show an express intent that the gift of the residue to the father and sisters was to them jointly as a class. Thus, it is urged, the presumption of gifts in severalty is adequately overcome.
I am unable to find in these circumstances the force urged by defendants. The fact that testator provided for substitution in one instance, and omitted such provision in another instance, can no more lead to the conclusion that he intended substitution in both instances than that he intended to omit substitution in both; it leads to neither one nor the other. The testator's reason can only be speculated upon. The same is true with regard to his failure to change the will after the death of his father. The will, as testator made it and maintained it unchanged, must be respected as expressive of his design and purpose. Dildine v. Dildine, supra.
An authority chiefly relied upon by defendants is Jackson v. Roberts, 80 Mass. [14 Gray] 546 (1860), a case cited with approval in Security Trust Company v. Lovett, 78 N.J. Eq. 445 (Ch. 1911). A feature which clearly distinguishes the Jackson case from the instant case was the execution of a codicil by the testator, after the death of one of the residuary legatees, which, in the peculiar circumstances of that case, was found to indicate testator's original intention to make a class gift of the residue. Comparable indicia of such an intent are not evinced herein.
In Rippel v. King, 126 N.J. Eq. 297 (Ch. 1939), Vice-Chancellor Bigelow had before him a will providing specific legacies for H and including H, with others, in the bequest *592 of the residuary estate "to be equally divided between them;" H predeceased testatrix who immediately made a codicil to her will revoking the specific legacies to H and making new bequests thereof, without mentioning the residuary gift. The surviving residuary legatees argued that they were entitled to the whole residuary estate  that by the execution of a codicil immediately following the death of H testatrix evidenced a clear intent not to leave any property unwilled. The cases of Security Trust Company v. Lovett, supra, and Jackson v. Roberts, supra, were discussed by the Vice-Chancellor who observed (p. 304) "they are not authority for a forced construction of the will in order to prevent intestacy, and therefore are inapplicable to the present case. The meaning of * * * [the] will is clear and cannot be upset by surmises drawn from the codicil." This decision was unanimously affirmed by the Court of Errors and Appeals, 128 N.J. Eq. 179. The circumstances in the case before me, so far as they are urged against partial intestacy, are by no means as compelling as in the Rippel case and, I am convinced, do not take the instant case out of the rule. Where a portion of a residuary gift lapses, the lapsed portion does not fall back into the balance of the residue, but passes under the statutes of descent and distribution. Hand v. Marcy, supra; Rippel v. King, supra. It follows herein that as to one-third of the residuary estate testator died intestate, and that the widow, as next of kin, was entitled thereto under the statutes of distribution and descent, unless she barred herself from that right.
Prima facie it is presumed that the donee of a legacy or devise accepts a gift which is beneficial to him, unless there is proof of a refusal to accept. Yawger's Executor v. Yawger, 37 N.J. Eq. 216 (Ch. 1883). A purpose to reject must be evidenced by some positive, overt act, and within a reasonable time. In re Howe, 112 N.J. Eq. 17 (Prerog. 1932). Although the benefits in this case accrue to plaintiff through partial intestacy, no sound reason is perceived why the same presumption should not arise.
*593 Estoppel and waiver must be proved by the party who asserts either. In the instant case, the widow made an inheritance tax report which, in respect of the several interests in her husband's residuary estate, was inconsistent with the present claim made by the executor of her estate. That feature of her report poses a legal question which, to a layman, or even to one trained in the law, is not without difficulty. A mistaken view of the law, so expressed, upon which no other party is led to act to his disadvantage works no estoppel. The fundamentals of equitable estoppel in pais are stated in Briscoe v. O'Connor, 119 N.J. Eq. 378 (E. & A. 1935), at page 384, to be:
"1. That the party against whom the estoppel is urged has, on a previous occasion, by words or conduct, made a representation or concealment of material facts inconsistent with the facts forming the basis of his present claim.
"2. That such party either knew the facts to be otherwise than represented, or except for gross negligence would have known; or that he pretended to know the facts when he knew that he did not know them.
"3. That such representation or concealment was made either with the intent to influence the conduct of another or else was made under such circumstances that a reasonably prudent man would suppose it was intended to be acted upon as true.
"4. That the party to whom it was made was ignorant of the facts and had no convenient opportunity to ascertain them.
"5. That the latter party, in good faith, relied upon the representations or conduct of the other party and thereby was led into such a course of conduct that he will now be substantially prejudiced if the other party be permitted to repudiate his former action or representation."
The widow's misapprehension of the law cannot be claimed as unconscionable or inequitable conduct; and there being no suggestion that any loss has been occasioned to the other residuary legatees by reason of their reliance upon the statement in the inheritance tax report, the claim of estoppel is not sustained.
Nor has waiver been established against the widow. The utmost that can be said is that she took no action to reduce to possession in her individual capacity (as distinguished from possession in her fiduciary capacity) the *594 share of the residuary to which she succeeded. To effect a waiver, there must be "a voluntary and intentional relinquishment or abandonment of a known existing legal right, advantage, benefit, claim, or privilege, which except for such waiver the party would have enjoyed; the voluntary abandonment or surrender, by a capable person, of a right known by him to exist, with the intent that such right shall be surrendered and such person forever deprived of its benefit; or such conduct as warrants an inference of the relinquishment of such right; or the intentional doing of an act inconsistent with claiming it." Roseville B. & L. Assn. v. Jones, 130 N.J.L. 53, 56 (E. & A. 1942). The reason for the widow's inaction herein is readily understood when the inheritance tax report is considered. It is clear that the widow was not aware of the existence of her right to a portion of the residuary. She cannot be said to have "intentionally" surrendered a right which she did not know to exist.
An example of the application of the doctrines of waiver and estoppel is New Jersey Suburban Water Co. v. Harrison, 120 N.J.L. 546 (Sup. 1938); reversed, 122 N.J.L. 189 (E. & A. 1938). There, in the course of proceedings pending before the Public Utility Commission, plaintiff's correspondence and stipulations respecting postponement of the effective date of a proposed increase in water rates had been relied upon not only by defendant municipality but by the Commission as well. Thereafter plaintiff obtained judgment against the municipality based on the increased rates; on appeal, the judgment was set aside. At page 195 the appellate court said "that the position [of the plaintiff Water Company] thus taken was relied upon by the municipality is indisputable" and that "the Utility Commission was likewise led to believe that there was no occasion to exercise, ex mero motu, the power of suspension pendente lite of such rate increases."
In no respect have the defendants been prejudiced, nor have they sustained any loss by reason of the alleged waiver. No injustice is done by rejecting the asserted claim of waiver.
Judgment for plaintiff may be entered in accordance with these conclusions.