CRABTREE, J.T.C.
This is a transfer inheritance tax case wherein plaintiffs seek review of the assessment of direct tax imposed by defendant with respect to (a) bequests made to decedent’s stepgrandchildren and (b) the devise of a legal life estate in decedent’s residence to a close friend. Plaintiffs claim that the bequests to stepgrandchildren should be taxed as transfers to Class A beneficiaries. Defendant taxed those bequests as transfers to Class D [1] beneficiaries. Plaintiff avers that no tax should be imposed upon the devise of the legal life estate as the beneficiary thereof made a timely, effective renunciation.
The value of the property transferred to the stepgrandchildren and the legal life tenant is not in dispute. Plaintiffs claim that transfers to the issue of stepchildren must be taxed the same as transfers to stepchildren, i.e., at rates applicable to Class A beneficiaries, just as transfers to the issue of adopted children are taxed at the same rates as transfers to the issue of natural children. To do otherwise, plaintiffs assert, is a deprivation of the beneficiaries’ rights to equal protection of the laws under the United States and New Jersey Constitutions. Plaintiffs allege that the legal life tenant’s renunciation was made in a timely, effective manner, whereas defendant determined that a renunciation, to be effective for transfer inheritance tax purposes, must be in writing and filed both with the clerk of the court where the will is probated and with the Transfer Inheritance Tax Bureau. N.J.A.C. 18:26-2.12.
*646 The facts have been fully stipulated pursuant to R. 8:8-l(b).
Plaintiffs decedent, Adele C. Mueller, died testate on December 18, 1977 a resident of North Caldwell, New Jersey.
John J. Mueller, Jr. (John, Jr.) was born January 24, 1919 in Dusseldorf, Germany. From that date on he lived with Adele Mueller, the sister of his natural mother. He did not live with his mother as she had tuberculosis and by German law was deprived of the care and custody of her son. Approximately two years after John Jr. was born his natural mother died.
On August 14, 1922, when John Jr. was SV2 years old, his father married Adele and from then on, until his enlistment in the United States Navy, John Jr. lived with his father and stepmother. In 1927, the family emigrated to the United States. When John Jr. was 11 years old he travelled to Germany, where he stayed for about 14 months. Upon his return he resumed living with his father and stepmother.
On January 9, 1960 John Jr. married Vera Rosemarie Grasser in Park Ridge, New Jersey. They resided in West Caldwell, New Jersey from March 1961 until John, Jr. died on January 8, 1968. The couple had two children, John J. Mueller III, born August 7, 1960 and Christian Vern Mueller, born October 10, 1962. These children lived in West Caldwell through the date of Adele Mueller’s death.
The relationship between John, Jr. and his stepmother, Adele Mueller, was a close, loving and affectionate one. The decedent relied heavily upon her stepson for financial, business and personal advice. John, Jr. usually lived within walking distance of his stepmother and saw or spoke with her almost daily. The decedent never legally adopted her stepson.
The relationship between the decedent and her two stepgrandchildren was also warm, loving and close. She had a protective attitude toward her two stepgrandchildren and worried about them if they were ill or were away on school trips or on vacation. Decedent and her close friend, Rose H. Christoph, were the only babysitters for the stepgrandchildren. Decedent was generous towards them with her monetary gifts and gifts of *647 clothing, toys and school tuition. As with her stepson, she was in almost daily contact with her stepchildren either personally or by telephone.
Rose H. Christoph was a family friend of the decedent since 1932, when they both worked as domestic servants in the same household. Rose resided continuously with decedent and the latter’s husband, initially in East Orange, New Jersey, then in West Orange, New Jersey and finally at 7 Hamilton Drive South, North Caldwell, New Jersey from 1943 to the date of decedent’s death. Rose advanced monies to decedent and John Mueller, Sr. in connection with the latter’s purchases of the West Orange and North Caldwell properties. She subsequently canceled these indebtednesses without consideration. Rose was 76 years old at the date of decedent’s death.
Decedent’s will and codicil, executed April 29, 1969 and October 20, 1970, respectively, bequeathed various assets to her stepgrandchildren and to Rose. Decedent bequeathed an income interest in her portion of Dairy Queen Associates to the step-grandchildren, who were also the sole beneficiaries of a trust created under the residuary clause of decedent’s will.
The decedent’s will also devised a legal life estate in the decedent’s residence located at 7 Hamilton Drive South, North Caldwell, New Jersey to Rose H. Christoph. Because she did not wish to remain in the home where she had resided with decedent for many years, Rose, within days of learning of the devise, orally advised plaintiffs that she would not accept the life estate and would move out of the house as soon as possible. Rose executed no formal written renunciation of her interest in the decedent’s residence. On January 17, 1978, however, Rose signed a lease for an apartment located at 588 Bloomfield Avenue, West Caldwell, New Jersey. She moved into this apartment on or about February 1, 1978. After Rose left 7 Hamilton Drive South, plaintiffs maintained and looked after that property and placed it on the market for sale. In March 1978 a contract of sale between plaintiffs as sellers and Anthony P. and Patricia A. Novello as purchasers was executed. Mr. and *648 Mrs. Novello also leased the property from plaintiffs from April 24, 1978 until June 30, 1978, when closing pursuant to the contract was held. Rose received no part of the rent paid by the Novellos during this period. The sale was consummated by means of a deed dated June 30, 1978 in which Rose joined as a grantor. The deed contained the following recital:
Rose H. Christoph joins in this conveyance for the sole purposes of terminating all of her right, title and interest in and to a certain Life Estate in the premises given to her pursuant to the provisions of the aforesaid Last Will and Testament of Adele C. Mueller, deceased.
Rose executed the deed in accordance with a requirement of the purchasers’ title insurance company. The deed was recorded July 12, 1978 with the Essex County Register’s Office. No portion of the proceeds of the sale was paid to Rose Christoph.
Schedule “A” of the United States Estate Tax Return (Form 706), filed on September 15, 1978, contained the following notation with respect to real property located at 7 Hamilton Drive South, North Caldwell, New Jersey: “Interest of Rose H. Christoph was renounced.” Subsequently, Schedule “A” of the New Jersey Transfer Inheritance Tax Return, filed December 27, 1978, included the same notation with respect to Rose’s interest in the decedent’s residence. Finally, a supplemental affidavit dated February 11, 1980 submitted to the Transfer Inheritance Tax Bureau contained the following statement:
Rose H. Christoph did not execute any formal renunciation of her right to live in decedent’s house. As soon as possible after decedent’s funeral she found an apartment and moved from decedent’s house, taking with her all her tangible personal property.
The New Jersey Transfer Inheritance Tax Act, N.J.S.A. 54:33-1, et seq., imposes a privilege levy on the right of succession to property transferred in specified cases. The shift of the economic burden and benefits of property ownership or interests therein, triggered by the death of the decedent, is the taxable event. The tax is imposed upon the transferee, and the amount thereof depends upon the value of the property transferred and the relationship of the transferee to the decedent. N.J.S.A. 54:34-1 et seq.; In re Lichtenstein Estate, 52 N.J. 553, 247 A.2d 320 (1968).
*649 Under N.J.S.A. 54:34-2, tax rates are established for three categories of transferees. Class “A” encompasses transfers to a “father, mother, grandparent, husband, wife, child or children of a decedent or to any child or children adopted by the decedent ... or the issue of any child or legally adopted child of a decedent....” N.J.S.A. 54:34-2(a). Transfers to a decedent’s brothers, sisters, sons-in-law and daughters-in-law comprise Class “C”. N.J.S.A. 54:34-2(c). Class “D” includes all other transferees not specified in Class “A” or Class “C”. N.J.S.A. 54:34-2(d). Class “A” beneficiaries are taxed at the lowest rates, i.e., between 2% and 16%, depending on the value of the transfers, while Class “D” beneficiaries are taxed at a minimum rate of 15%.
N.J.S.A. 54:34-2.1 applies the preferred Class “A” tax rates to stepchildren and “mutually acknowledged” children, as follows:
The transfer of property passing to any child to whom the decedent for not less than ten years prior to such transfer stood in the mutually acknowledged relation of a parent, provided such relationship began at or before the child’s fifteenth birthday and was continuous for ten years thereafter, shall be taxed at the same rates and with the same exceptions as the transfer of property passing to a child of said decedent born in lawful wedlock.
The transfer of property passing to a stepchild of a decedent shall be taxed at the same rates and with the same exceptions as the transfer of property passing to a child of said decedent born in lawful wedlock.
Thus, under this statute, stepchildren are Class “A” beneficiaries, transfers to whom are taxed at the preferred rates specified in N.J.S.A. 54:34-2(a). However, unlike N.J.S.A. 54:34-2(a) which extends Class “A” treatment to the issue of natural and legally adopted children, N.J.S.A. 54:34-2.1 restricts Class “A” treatment to stepchildren and mutually acknowledged children. Thus, in the case before this court, defendant treated the decedent’s two stepgrandchildren as Class “D” beneficiaries and assessed a tax on the transfers to them at the 15% rate set forth in N.J.S.A. 54:34-2(d).
In Hopkins v. Neeld, 41 N.J.Super. 345, 125 A.2d 153 (App.Div. 1956) the court, relying upon the plain language of the statute and upon the principle that tax exemption provisions are strictly construed against the claimant, concluded that transfers to *650 stepgrandchildren were not entitled to the preferred Class “A” tax rates, saying:
Had the Legislature intended by the adoption of ... [what is now N.J.S.A. 54:34-2.1] to grant preferential treatment to the issue of stepchildren of a decedent, it would have been a simple matter to insert such an express provision in the 1937 act. In that connection it is to be noted that in [N.J.S.A.] 54:34-2(a) preferential treatment was granted not only to natural and adopted children of decedent but also to “the issue of any child or legally adopted child of a decedent.” Had the Legislature so desired, a provision in similar language could have been, but was not, inserted in the statute with relation to the issue of stepchildren of a decedent, [at 351, 125 A.2d 153].
Plaintiffs, while apparently acknowledging the legislative denial of preferred tax status to stepgrandchildren, argue that such a denial violates the equal protection clauses of both the United States Constitution Amend. XIV, § 1 and the New Jersey Constitution (1947), Art. I, par. 1. They contend that the New Jersey Transfer Inheritance Tax statutes unjustifiably discriminate against stepgrandchildren by denying them the preferred tax status accorded stepchildren, natural children, adopted children and the issue of natural and adopted children. Plaintiffs’ contentions in this regard are without merit.
The standard for determining whether a statutory classification is consistent with the equal protection clause of the 14th Amendment was set forth in Allied Stores of Ohio, Inc. v. Bowers, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959):
The State must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. The rule often has been stated to be that the classification “must rest upon some ground of difference having a fair and substantial relation to the object of the legislation.. .. ” “If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law...." That a statute may discriminate in favor of a certain class does not render it arbitrary if the discrimination is founded upon a reasonable distinction, or difference in State policy... [at 526-527, 79 S.Ct. at 440-441; citations omitted]
In the field of taxation states are given “large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation.” Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 359, 93 S.Ct. 1001, 1003, 35 L.Ed.2A 351 (1973). Indeed, a strong presumption of constitutionality attends the legislative classification and the party *651 challenging it must negate “every conceivable” basis for the statute, since the statute must be upheld if any state of facts can be reasonably conceived to sustain it. Allied Stores of Ohio, Inc. v. Bowers, supra; Taxpayers Ass’n of Weymouth Tp., Inc. v. Weymouth Tp., 80 N.J. 6, 364 A.2d 1016 (1976); Airwork Service Division v. Taxation Div. Director, 2 N.J.Tax 329 (Tax Ct.1981), aff'd o.b. per curiam 4 N.J.Tax 532 (App.Div.1982), certif. granted 93 N.J. 246, 460 A.2d 656 (1983).
In 1937, what is now N.J.S.A. 54:34-2.1, according the same preferential tax treatment to stepchildren and “mutually acknowledged” children as theretofore was available only to natural and adopted children and their issue, was enacted. The Legislature was motivated by the consideration that stepchildren or “mutually acknowledged” children generally occupied a relationship to the decedent essentially equivalent in devotion and affection to that which normally existed between natural or adoptive parents and their children. Bravand v. Neeld, 35 N.J.Super. 42, 47, 113 A.2d 75 (App.Div.1955); Statement to Assembly Bill 160 (L.1937, c. 128). No such legislative finding was made concerning the issue of stepchildren, so the preferential tax rates were not extended to them.
In brief, then, the Legislature has concluded that a stepchild, as a child of the decedent’s spouse and toward whom that decedent was more likely than not to have had a caring relationship, warrants the preferred tax status that a stepgrandchild does not merit. While a stepchild is apt to have spent some time living as part of a deceased stepparent’s household, or at least to have had a meaningful relationship with the deceased stepparent, a stepgrandchild may have had little or no contact with the stepparent. In this context the comments of the Appellate Division in Hopkins v. Neeld, supra, have special significance:
Sixth, there are conceivable circumstances that might support a logical argument for treating stepchildren and their issue with the same consideration as natural children and their issue in . .. the imposition of transfer inheritance taxes. For example, a woman who married a widower, the father of several small children, and who raises her stepchildren with all the care and affection they might expect from the natural mother, would be such a case. On the other hand, a woman who marries a widower having grown children no longer *652 members of the household, would not be charged with the responsibility of work, care and affection toward them as in the former example, and such circumstance would hardly support an argument that the stepchildren and the issue of stepgrandchildren would be entitled to special consideration in such a case.- [41 N.J.Super. at 352-353, 125 A.2d 153].
The point is that the New Jersey statutes dealing with the taxation of testamentary transfers contemplate preferential treatment for nonblood relationships only where there is a consensus that the probability of a close relationship exists. In the case of stepgrandchildren the Legislature apparently determined that their relationship to a stepgrandparent is much more distant than in the case of stepchildren or the issue of adopted children.
To be sure, the stipulated facts in this case disclose the existence of a loving, intimate relationship between the decedent and her stepgrandchildren from the latters’ infancy to the date of decedent’s death. Nevertheless, the inheritance tax laws give neither defendant nor this court the discretion to decide, on an ad hoc basis, when stepparent-stepgrandchildren relationships warrant favorable tax treatment. Rather, the statute and defendant’s administration of it treat all such relationships the same by imposing Class “D” tax rates.
A case directly in point is Estate of Kunkel v. United States, 689 F.2d 408 (3 Cir.1982), rev’g and remanding 518 F.Supp. 690 (M.D.Pa.1981), where the court dealt with a challenge to the Pennsylvania inheritance tax statute according favorable tax treatment to stepchildren but denying such treatment to the issue of stepchildren. The basis for the challenge was the same as that advanced by plaintiffs in this case, namely, a claimed denial of equal protection guaranteed by the 14th Amendment to the United States Constitution. The Court of Appeals upheld the constitutionality of the statute, characterizing the purpose of the statute’s tax rate structure as:
[t]he promotion of close family relationships: bequests to close relatives are encouraged by taxing those bequests at a lower rate than are bequests to more distant relatives and nonrelatives. Having made this observation, the inquiry into the validity of the challenged classifications is at an end; and a legitimate purpose has been identified, and a rational relationship between that purpose and the means chosen to foster it has been established. [Citation omitted]. It is *653 not for the Courts to conduct a more exacting inquiry into the “true” purpose of the statute, or to ask whether some alternative means would have been more closely tailored to achievement of the end sought, [at 416]
Then, in response to the taxpayer’s assertion that the statute did not even advance the hypothetical aim attributed to it the Court of Appeals explained that:
[t]he Equal Protection Clause does not require that a state, in deciding which bequests to tax at a lower rate, consider only one factor to the exclusion of others. Rather, it is for the Legislature, and not the courts, to decide how much weight, if any, to place on factors such as blood relationship and family ties in determining which relatives should be included in “Class A” and which in “Class B.” The exact point at which the lines are drawn inevitably will have a degree of arbitrariness; yet as one court has noted, “[legislative line drawing .. . may produce different tax consequences in nearly identical situations but such lines must be drawn to make a tax system workable and alterable. [Citation omitted]. That unfortunate but inevitable degree of arbitrariness, cannot provide a basis for invalidating a statutory classification under the Equal Protection Clause. See Vance v. Bradley, 440 U.S. [93] at 108 [99 S.Ct. 939, 948, 59 L.Ed.2d 171] (“[e]ven if the classification ... is to some extent both underinclusive and overinclusive and hence the line drawn by the [legislature] is imperfect, it is nevertheless the rule that in a case like this ‘perfection is by no means required’”). [at 417]
The statute at issue in Kunkel is virtually identical to N.J.S.A. 54:34-2.1; and the reasoning by the Court of Appeals applies with equal force to the case before this court.
Accordingly, I conclude that the legislative distinction, implicit in N.J.S.A. 54:34-2.1, between stepchildren and the issue of stepchildren nas a presumptively rational basis and the statutory classification is not unconstitutional.
Plaintiffs argue that Rose Christoph’s renunciation of the devise of a legal life estate in decedent’s residence should be given full force and effect for inheritance tax purposes, that her conduct evidencing the renunciation was clear and unequivocal, and that defendant’s regulation requiring the filing of a written renunciation is invalid as lacking in statutory authorization. Defendant contends that Rose’s renunciation was not clear and unambiguous, that it was not made in a timely manner, and that, in any event, her failure to file the written renunciation in the manner required by regulation was dispositive for inheritance tax purposes.
*654 It is well settled that a renunciation at common law[2] of a devise or bequest must be express, clear and unequivocal, and evidenced by a positive, overt act of the beneficiary within a reasonable time. Re Howe’s Estate, 112 N.J.Eq. 17, 163 A.234 (Prerog.Ct.1932); Lawes v. Lynch, 7 N.J.Super. 584, 72 A.2d 414 (Ch.Div.1950), aff’d 6 N.J. 1, 76 A.2d 885 (1950); Annotation, “What constitutes or establishes beneficiary’s acceptance or renunciation of devise or bequest,” 93 A.L.R.2d 8 (1964); Atkinson, Wills (2d ed. 1953), § 139 at 774; 6 Bowe-Parker: Page on Wills (3 ed. 1962), § 49.2 at 39. A renunciation need not be in writing; it may be made by parol. Olsen v. Wright, 119 N.J.Eq. 103, 181 A. 182 (Ch.1935); 5A N.J.Practice, (Clapp, Wills and Administration) (3 ed. 1982), § 394 at 236. A renunciation if otherwise valid, is not vitiated merely because its purpose is to defeat the inheritance tax which otherwise would be imposed on the transfer. Wells v. Taxation Div. Director, 3 N.J.Tax 420 (Tax Ct.1981).
Application of these principles to the undisputed facts in this case leads me to conclude that, but for defendant’s regulation, to be discussed hereafter, Rose Christoph’s renunciation of the life estate devised to her by decedent’s will was clear and unequivocal, that it was evidenced by positive, overt acts and statements, and that it was made within a reasonable time. Within days of learning of the devise Rose orally advised plaintiffs of her refusal to accept the life estate; within a month after decedent’s death she signed a lease for an apartment in West Caldwell and moved into it on or about February 1, 1978; the decedent’s residence was temporarily leased by plaintiffs to the contract purchasers thereof and Rose, who was not a party to the lease agreement, neither claimed nor received any portion of the rent proceeds; when the sale of the residence was *655 subsequently closed Rose, who was not a party to the contract of sale, neither claimed nor received any part of the sale proceeds.
Defendant argues, however, that Rose’s signature on the deed consummating the sale of the decedent’s residence only six months after decedent’s death is inconsistent with her prior actions manifesting an intention to renounce, in view of the recital in the deed that she joined therein for the sole purpose of terminating all her right, title and interest in the premises arising from the life estate devised to her. Had she effectively renounced her interest in the property prior to the sale, defendant continues, her signature on the deed would have been unnecessary. Defendant’s argument is wide of the mark. As the undisputed facts show, Rose’s signature on the deed was required by the purchasers’ title insurance company which could not insure marketable title until all record title defects were resolved. The record title to decedent’s residence, prior to the sale, was encumbered by the life estate, which was a matter of record by virtue of the probate of decedent’s will. The only way to cure this defect and thus guarantee marketable title, was by the execution and recording of an instrument releasing the life tenant’s interest in the property. This was accomplished by Rose’s signature on the deed of conveyance reciting such release. Thus Rose’s signature on the latter document was manifestly not inconsistent with her prior unequivocal renunciation.
Defendant contends, however, that irrespective of a finding that Rose’s conduct constituted a valid renunciation at common law, her acts were ineffective for tax purposes, as she failed to file a written renunciation with the Essex County Surrogate and with the Transfer Inheritance Tax Bureau as required by defendant’s regulation N.J.A.C. 18:26-2.12. Plaintiffs reply that the regulation is invalid for lack of statutory authority. Defendant looks for support to Wells v. Taxation Div. Director, supra, wherein this court found renunciations filed more than seven months after the decedent’s death to be ineffective as not filed within a reasonable time. Defendant’s reliance upon Wells is misplaced. The court in that case, while addressing the issue of defendant’s authority under the statute to promulgate the *656 regulation in question, appeared to place primary reliance upon the failure of the beneficiaries to renounce their bequests within a reasonable time. Indeed, the taxpayer in Wells, unlike plaintiffs in the instant case, did not challenge the regulation. I thus regard the court’s discussion of the regulation’s validity as dictum, and I conclude that Wells is distinguishable on its facts from the instant case.
What the court in Wells was not compelled to decide inescapably confronts the court in the case now before it, namely: can a renunciation valid under common law be nevertheless ineffective for inheritance tax purposes for failure to. comply with a regulation delineating the exclusive means by which a renunciation can be effected? The resolution of this issue depends upon defendant’s authority under the statute to promulgate the disputed regulation.
N.J.A.C. 18:26-2.12 provides:
If a transferee under a will renounces his rights thereunder, or any portion thereof, the renunciation is given effect in computing the tax against the estate; provided, the instrument of renunciation is filed within a reasonable time in the office of the clerk of the court where the will is probated and a copy thereof filed with the Transfer Inheritance Tax Bureau.
This regulation was presumably adopted on the authority of N.J.S.A. 54:50-1, which empowers defendant to make and enforce rules and regulations to carry into effect the provisions of the tax laws. It is well settled, however, that administrative regulations must be within the fair contemplation of the delegation of the enabling statute. New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 384 A.2d 795 (1978); In re Houghton’s Estate, 147 N.J.Super. 477, 371 A.2d 735 (App.Div. 1977), aff’d o.b. per curiam 75 N.J. 462, 383 A.2d 713 (1978); Sorensen v. Taxation Div. Director, 2 N.J.Tax 470, 184 N.J.Super. 393, 446 A.2d 213 (Tax Ct.1981). Here, the only statutory reference accompanying the regulation is N.J.S.A. 54:34-1 a, an exceedingly broad provision subjecting to inheritance tax all transfers by will or intestacy of a decedent residing in New Jersey at the time of his death. There is not even a remote connection between that statute of broad, general application *657 and the specific requirements of the regulation in dispute. No statute empowers defendant to promulgate regulations dealing with property rights and their relinquishment. Indeed, defendant’s previous attempt to do so was met with a judicial declaration of invalidity. In In re Houghton’s Estate, supra, the court held that a regulation purporting to apply the doctrine of equitable conversion in inheritance tax cases to entireties property under contract of sale at the death of a co-owner was beyond the authority delegated to defendant by the statute under which the regulation was adopted.
Not only is the regulation in issue here not predicated upon any statutory authority but, as it purports to restrict the means by which a valid renunciation can be accomplished, it is contrary to existing law as expressed in the cases hereinabove cited.
I conclude that N.J.A.C. 18:26-2.12 is not within the fair contemplation of the enabling statute and is therefore invalid.
The parties will submit a computation of the direct tax pursuant to R. 8:9-3, following which judgment will be entered.

The difference is substantial. If the stepgrandchildren are treated as Class A beneficiaries, the total direct tax on the value of their bequests is $97. Defendant treated them, however, as Class D beneficiaries and the tax applicable to their bequests on that basis is $2,969.69.

The subject of renunciations is now comprehensively covered by statutes enacted after the date of the decedent’s death. N.J.S.A. 3A:25-39 et seq., effective February 28, 1980, superceded by N.J.S.A. 3B:9-1 et seq., effective May 1, 1982.