# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3207-22

D.E.,

    Plaintiff-Respondent,

v.

A.K.,

    Defendant-Appellant.

_____

        Submitted September 11, 2024 – Decided September 25, 2024

        Before Judges Rose and Puglisi.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FV-07-1502-23.

        A.K., appellant pro se.

        Rutgers Law Associates, attorneys for respondent (Vadim Korytny, on the brief).

PER CURIAM

Defendant A.K.[1] appeals from a June 19, 2023 final restraining order (FRO) entered against him in favor of plaintiff D.E. pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35.  We affirm.

I.

During the two-day FRO hearing, plaintiff testified that the parties' brief intimate relationship began in mid-October 2021 when they met at the wedding venue where plaintiff worked.  Over the course of the next few weeks, they saw each other in person for three dates.  By the end of the year, plaintiff believed the relationship had run its course and had ended amicably.

After six months without communication, defendant contacted plaintiff by phone and they had a brief conversation about remaining friends.  Plaintiff told defendant he had recently married and defendant told plaintiff he was in a relationship.  Their call was followed by a text message plaintiff described as "random" and "confusing," which said, "That sweater and song . . . You know I wanted it to work with you right."  Although the parties exchanged text messages, they attempted to but did not connect for a phone conversation.

---

[1]  We use initials to protect the parties' privacy and the confidentiality of the proceedings in accordance with Rule 1:38-3(d)(10).

A-3207-22

A few weeks later, the tone of defendant's text messages "changed dramatically" to "illogical and . . . very confusing and outlandish and hyperbolized." Some text messages were "weirdly sexualized . . . and . . . very odd." Plaintiff testified he was "completely caught off guard" by defendant's communications and was "in constant bewilderment by the shock value of what was going on" because their relationship was very brief and casual, and they had not been in contact for months after it ended. Plaintiff repeatedly told defendant he wanted nothing more than a friendship with him, and sent him a video message explaining he would prefer a friendship because there was a "lack of compatibility . . . past a friendship." When defendant's texts persisted, plaintiff ceased responding, wanting just to be left alone. Defendant admitted on cross-examination he was "interested in a sexual, intimate, beyond-friendship" relationship with plaintiff.

Following another month without any communication, defendant sent plaintiff a "barrage" of "absolutely degrading" text messages containing "disgusting comments" about plaintiff. He also sent plaintiff's spouse numerous lengthy, rambling text messages that contained similarly inappropriate, intimate and invasive comments about plaintiff, the parties' prior sexual relationship and

3

plaintiff's marriage. The trial judge aptly described the messages as "deep, and personal[] and long." Plaintiff's spouse did not respond to defendant.

About a month later, in early September 2022, defendant reinitiated contact with plaintiff via text message, which again turned lengthy, aggressive and derogatory. According to defendant, two weeks later he saw plaintiff had posted affirmations[2] on his public Facebook page and, although they did not reference defendant, he nevertheless believed plaintiff's remarks referred to him. In response, defendant sent plaintiff text messages that were "increasingly deeper and darker."

When he did not receive any response from plaintiff, defendant posted on his own Facebook page what the trial judge described as a "long, personal post professing love, telling the story, saying personal things to . . . plaintiff, none of which [was] appropriate on a public posting." Although defendant did not name plaintiff, he tagged[3] the post's location as plaintiff's place of employment,

---

[2] The affirmations were: "1) Listen to your body and mind: take a break sometimes. 2) For every person who tries and knocks you down, there will be another two to life you up. (Don't fixate on the knocker). 3) Patience is a learned trait, that takes [. . .] patience [with smiling emoji]. 4) People anywhere can say anything they want about you at any point, true or false, so stop worrying. 5) If the vibe is negative, cut it out."

[3] "Tagging" refers to identifying individuals or locations in a post.

A-3207-22

specifically naming the restaurant and identifying plaintiff as the "exec/head pastry chef." Defendant's tagging the restaurant caused the post to appear on the restaurant's public page.

Defendant's thirteen-paragraph missive described plaintiff as his "superhero" who "turned . . . grandiose, full of rage, and dangerous," someone who "took pleasure in trying to deceive . . . , abuse . . . , bait . . . , and string [defendant] along, for a long time." Defendant stated "things" plaintiff had done "to [him] and others were disturbing, devoid of love." He discussed plaintiff and his spouse, saying their attempts to have a baby were "banking on [defendant's] silence."

The post concluded with the following:

> ***Why I won't out my abusers by name is simple: this is about me. I won't name them if I might be invalidated for seeking attention, or draw more attention to them than they deserve—for now. Both are surrounded and supported by other morally and spiritually bankrupt like-minds, and are out there expanding their reach and covertly abusing others. The first could spell trouble for my career if I retaliate. The second is set to appear on a platform baking competition by year's end. Both get by almost undetected—almost, [because] while these personalities admitted to having done this to those before me and will continue to do so, the truth is loud and always reveals itself, one need only be willing to look and to listen.

Defendant updated the post twice, stating plaintiff, the "malignant abuser," had been fired from his job because of "misconduct with coworkers and customers," but surmising plaintiff would "say he quit for mental health reasons." The five-paragraph final update to defendant's post ended with:

> All this just to say: What is done in the dark will come to light, but in the meantime, always stand up for yourself and what you know in your heart to be true and good.
>
> And, just a reminder, it's not a smear campaign if it's exposing an abuser based on truths. Smear campaigns are made on lies, and I don't have to resort to lies when everything written here is true.[]

When plaintiff's friends brought the posts to his attention, he filed for a temporary restraining order, alleging defendant committed acts of criminal coercion, harassment, stalking and cyber harassment.

After hearing testimony from plaintiff's witnesses and the parties, the judge found plaintiff credible about his "thoughts and feelings" and noted he "clearly exhibited a nervousness due to what he perceived the defendant has done, or may be able to do to him." She found defendant not credible because his testimony was inconsistent and he "appeared to minimize his responsibility for his actions claiming he was wronged in some way by the plaintiff."

6

The judge determined plaintiff did not establish the predicate acts of criminal coercion, stalking or cyber harassment, but found he had proven the offense of harassment by a preponderance of the evidence. The judge also determined a final restraining order was necessary to protect plaintiff from further acts of domestic violence and issued the FRO.

This appeal follows.

## II.

Defendant urges us to vacate the FRO on several grounds. First, he argues the judge erred in finding the Facebook location tag was an act of harassment and was inconsequential. He contends the purpose to harass may not be inferred because his conduct was not alarming, annoying or offensive nor was it a course of conduct; and even if his conduct was alarming, annoying or offensive, it was merely expressive activity. He further argues the judge erred in finding he had a purpose to harass, in violation of his First Amendment rights. Defendant also claims the judge erred by finding plaintiff needed the protection of an FRO and showed bias during the proceedings. We disagree.

"In our review of a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." D.N. v. K.M., 429

7

N.J. Super. 592, 596 (App. Div. 2013) (citing Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare, 154 N.J. at 411-12. Reversal is only warranted when a trial court's findings are "so wide of the mark that a mistake must have been made." N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting C.B. Snyder Realty Inc. v. BMW of N. Am. Inc., 233 N.J. Super. 65, 69 (App. Div. 1989)).

We also apply a deferential standard in reviewing a judge's factual findings. Balducci v. Cige, 240 N.J. 574, 594 (2020); State v. McNeil-Thomas, 238 N.J. 256, 271 (2019). In an appeal from a non-jury trial, appellate courts "give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015) (citing Rova Farms Resort v. Invs. Ins. Co., 65 N.J. 474, 483-84 (1974)). Deference is likewise given to credibility findings. State v. Hubbard, 222 N.J. 249, 264 (2015) (citation omitted). "Appellate courts owe deference to the trial court's credibility determinations as well because it has 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" C.R. v. M.T., 248 N.J. 428, 440 (2021) (quoting Gnall v. Gnall, 222 N.J. 414, 428 (2015)).

Our review of a trial court's legal conclusions is de novo. Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

In an application for an FRO, the judge must determine whether plaintiff proved, by a preponderance of the credible evidence, defendant committed one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a). Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006).

"Under a preponderance standard, 'a litigant must establish that a desired inference is more probable than not. If the evidence is in equipoise, the burden has not been met.'" N.J. Div. of Youth & Fam. Servs. v. N.S., 412 N.J. Super. 593, 615 (App. Div. 2010) (quoting Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 169 (2006)). "The evidence must demonstrate that the offered hypothesis is a rational inference, that it permits the trier[] of fact to arrive at a conclusion grounded in a preponderance of probabilities according to common experience." Ibid. (quoting In re Estate of Reininger, 388 N.J. Super. 289, 298 (Ch. Div. 2006)) (citation omitted) (alteration in original).

A person commits the offense of harassment if, with purpose to harass another, the person:

> a. Makes, or causes to be made, one or more communications anonymously or at extremely

inconvenient hours, or in offensively coarse
language, or any other manner likely to cause
annoyance or alarm;

. . . .

c. Engages in any other course of alarming conduct or
of repeatedly committed acts with purpose to alarm
or seriously annoy such other person.

[N.J.S.A. 2C:33-4.]

"[I]ntegral to a determination of harassment" under either subsection is a
finding by the trial court "that defendant acted with a purpose or intent to harass
another." State v. Duncan, 376 N.J. Super. 253, 261 (App. Div. 2005) (citations
omitted). Subsection (c) requires a course of conduct, rather than a single
communication. J.D. v. M.D.F., 207 N.J. 458, 477-78 (2011). A course of
conduct must be demonstrated by objective proof that it is "alarming or . . . a
series of repeated acts . . . done with the purpose to alarm or seriously annoy the
intended victim." State v. Burkert, 444 N.J. Super. 591, 600 (App. Div. 2016)
(citation and internal quotation marks omitted). Subsection (c) also requires
proof that the defendant "reasonably put that person in fear for his safety or
security or . . . intolerably interfere[d] with that person's reasonable expectation
of privacy." State v. Burkert, 231 N.J. 257, 284-85 (2017).

Here, the record supports the judge's finding defendant committed the act of harassment under both subsections (a) and (c). Plaintiff's credible testimony established defendant periodically sent a barrage of invasive, unwanted text messages that escalated to posting the public message, which constituted a continuing course of conduct committed with the purpose to seriously annoy plaintiff under subsection (c). The posting by itself was also likely to cause annoyance or alarm to plaintiff under subsection (a). The judge found defendant's conduct under both subsections was purposeful and done with the intention to harass plaintiff.

Under the second prong of Silver, the court must determine whether the FRO is necessary to protect the victim from an immediate danger or to prevent further abuse. Silver, 387 N.J. Super. at 127 (citing N.J.S.A. 2C:25-29(b)). In doing so, the court must consider:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;
>
> (3) The financial circumstances of the plaintiff and defendant;
>
> (4) The best interests of the victim and any child;

(5) In determining custody and parenting time the protection of the victim's safety; and

(6) The existence of a verifiable order of protection from another jurisdiction.

[N.J.S.A. 2C:25-29(a).]

The judge considered the relevant factors in this case. She noted there was no history of domestic violence between the parties, and defendant testified he had obtained a temporary restraining order against plaintiff in New York. However, after considering the testimony and evidence, the judge determined defendant's harassing conduct would continue absent an FRO because defendant "still [did] not understand the significance or the seriousness of his actions in this matter." Thus, she found the FRO was necessary to stop the harassment and prevent further harm to plaintiff.

Having reviewed the record, we discern no abuse of discretion in the judge's credibility determinations and factual findings, nor any error in her legal conclusions that an FRO should issue.

To the extent we have not expressly addressed any issues raised by defendant, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12